CAREY v. BILBY et al. (two cases).

(Circuit Court of Appeals, Eighth Circuit. March 7, 1904.)

Nos. 1,929, 1,930.

1. TORTS—JOINT TORT FEASOR—RELEASE OF ONE—CONSTRUCTION—EFFECT.

Plaintiff, claiming a right of action for damages against C. and H. jointly for alleged fraudulent misrepresentations in the sale of cattle, accepted a certain amount of money from H., and executed a release discharging him from any and all liability by reason of such misrepresentations, and agreeing to indemnify him from being compelled to pay any further sum by reason thereof. The release, however, expressly provided that plaintiff did not relinquish or release any action or cause of action against C. by reason of the premises, but reserved his right to sue C. or the firm of C. Bros. on such cause of action. *Held*, that such instrument should not be treated as a technical release terminating plaintiff's cause of action against all the joint tort feasors, but as a covenant not to sue H., and was therefore no defense to an action against C.

In Error to the Circuit Court of the United States for the District of Nebraska.

John S. Bilby and Russell I. Bilby, the defendants in error in case No. 1,929, brought an action against John L. Carey, the plaintiff in error, to recover certain damages for injuries which they claimed to have sustained in consequence of their being induced by the defendant, Carey, to purchase from him certain Texas cattle through false representations. John S. Bilby and John E. Bilby, the defendants in error in case No. 1,930, brought a similar action against John L. Carey, plaintiff in error. The complaints in the two cases were substantially alike, except that in case No. 1,929 the damages claimed by the plaintiffs below were $13,611, whereas the damages claimed in case No. 1,930 was the sum of $3,809. The complaints stated, in substance, that in the month of May, 1897, the defendant, Carey, and one C. J. Hysham were the owners of 755 head of cattle, which had been shipped by them from the state of Texas to the city of St. Joseph, Mo.; that said Carey and Hysham offered to sell to the plaintiffs below certain of said cattle, and, to induce them to buy, represented that the cattle had been kept during all of the preceding winter and spring in a part of the state of Texas, which was entirely free from, and not infected with, a certain contagious disease commonly known as "Spanish Fever," and that they had not been driven over or in the vicinity of any territory in the state of Texas which was infected by said disease, and had not been exposed thereto, but were in a sound and healthy condition; that, relying on this representation, and believing the same to be true, they purchased a certain number of the cattle from Carey

---

¶ 1. See Release, vol. 42, Cent. Dig. §§ 68, 71.

and Hysham, and paid them therefor; that the representations aforesaid, at the time they were made, were known to the vendors of the cattle to be untrue; that they also knew that the purchasers of the cattle would pasture them on lands in the state of Missouri with a large number of Missouri and other native-born northern cattle; that they were so pastured by the vendees, after they were purchased, with other northern-bred cattle; that, in consequence of their being affected with the contagious disease aforesaid, they communicated the disease to other cattle with whom they were herded, which belonged to the plaintiffs below, and that in consequence thereof the plaintiffs lost a large number of cattle of great value, and that they were damaged in the one case to the amount of $15,840 and in the other case to the extent of $4,580, in consequence of the disease in question being communicated to their respective herds. The plaintiffs below further alleged that they had been paid by C. J. Hysham, on account of the damages claimed in case No. 1,929, the sum of $2,229, and that they had been paid by C. J. Hysham, on account of the damages claimed in case No. 1,930, the sum of $771, leaving a balance of damages due to them in the one case in the sum of $13,611 and a balance due to them in the other case in the sum of $3,809.

Among other allegations contained in the defendant's answer it was admitted that the plaintiffs had received from C. J. Hysham the sums of money alleged in the complaints, and it was alleged that the sums so paid to the plaintiffs by Hysham were received and accepted by said plaintiffs in full release, satisfaction, and discharge of the pretended causes of action sued upon in said actions, and in full release of said Hysham from all liability thereon. On the trial of the cases the receipt which was signed by the plaintiffs when the sums of money were paid to them by C. J. Hysham was introduced in evidence, and was of the following purport:

"Whereas, on or about the ——— day of May, 1897, T. J. Hysham acting for C. J. Hysham or C. J. Hysham & J. L. Carey, as partners or either of them, purchased for said C. J. Hysham or C. J. Hysham & J. L. Carey as partners, or either of them, certain cattle of Comer Bros., in the State of Texas, and

"Whereas, said cattle were shipped from the State of Texas and were sold and delivered by said C. J. Hysham or C. J. Hysham and J. L. Carey as partners, or either of them, to J. S. Bilby in St. Joseph, Missouri, on or about the ——— day of May, 1897, and

"Whereas, said J. S. Bilby did on the day last above named receive from said C. J. Hysham, or C. J. Hysham & J. L. Carey as partners, or either of them, at St. Joseph, Missouri, about 756 of said cattle, and did at said time execute and deliver to the said C. J. Hysham his certain promissory note for the purchase price of said cattle, together with a chattel mortgage on said cattle thus bought by him securing said note, and

"Whereas, the said J. S. Bilby has since paid off and discharged said note and mortgage, and

"Whereas, after buying said cattle said Bilby took the same to his farms described in said chattel mortgage, and

"Whereas, after taking said cattle to his farm, the said Bilby claims that many cattle owned by him or others have died, and that many other cattle became sickened and impoverished, and

"Whereas, the said Bilby claims that the said cattle thus dying and the others thus becoming sickened and impoverished was caused by reason of what is commonly called the Spanish or Texas fever, and

"Whereas, the said Bilby claims the said Spanish or Texas fever was imparted or conveyed by the cattle that he thus bought at St. Joseph, Missouri, as aforesaid recited.

"Now, therefore, in consideration of the sum of $3,000.00 to me in hand paid by T. J. Hysham and C. J. Hysham, and the further consideration of the said T. J. Hysham and C. J. Hysham having assigned to me all claims and causes of action that they, or either of them have against the said Comer Bros., growing out of or in any way connected with the said purchase of said cattle from said Comer Bros., I, J. S. Bilby, fully release and discharge him, the said T. J. Hysham, and the said C. J. Hysham from any and all liability by reason of each, all and every of the foregoing matters and things, and re-

lease him, the said T. J. Hysham and the said C. J. Hysham from any and all liability in any way connected with or growing out of the aforesaid matters. And I will indemnify, protect and save harmless the said T. J. Hysham and the said C. J. Hysham from paying any further sum to any person or persons whatsoever, on account of any or all the matters set forth in this contract.

"But it is expressly and specifically understood in the execution and delivery of this paper that I do not relinquish or release any action or causes of action that I may now or hereafter have against him, the said J. L. Carey, or them, the said Comer Bros., or either of them by reason of any of the matters or things hereinbefore recited, expressly and specifically reserve to myself the right to maintain in said action or actions against him, the said J. L. Carey, or them, the said Comer Bros., or either or all of them by reason of said matters and things or any of them that I now have or may hereafter have.

"Signed this second day of August 1898.                    John S. Bilby."

The trial below resulted in a verdict in favor of the plaintiffs in case No. 1,929 for the sum of $2,229 and in a verdict in favor of the plaintiffs in case No. 1,930 for the sum of $771, on which verdicts judgments were subsequently entered. The defendant below has brought the cases to this court on writs of error.

John C. Cowin, for plaintiff in error.

James W. Hamilton (H. E. Maxwell, on the brief), for defendants in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

At the conclusion of the evidence on the trial below, counsel for the defendant requested a peremptory instruction to find a verdict in favor of his client. This instruction was asked, as it seems, on the sole ground that the release which had been executed by the plaintiff Bilby in favor of T. J. Hysham and C. J. Hysham operated as a release of the defendant, Carey, although it was not so intended, and that no action could be maintained against him in consequence of the execution of this instrument. The trial court denied the request, holding that the release in question did not have the effect claimed for it. It is conceded by counsel for the plaintiff in error that the only question for determination by this court is whether the trial judge was right in his view that the release did not operate as a discharge of the cause of action against Carey.

It is an old and well-established rule of law that the release of a cause of action as against one of two or more joint tort feasors or joint obligors operates as a release of all. This is upon the theory that when one has received full compensation for a wrong, no matter from which wrongdoer or from what source, the law will not permit him to recover further damages. Lovejoy v. Murray, 3 Wall. 1, 17, 18 L. Ed. 129. When a release of a cause of action for a tort is given by the injured party to one of two or more persons who committed the wrong, the release is construed most strongly against the party executing it. The law indulges in the presumption that the release was given in full satisfaction for the injury, and upon a sufficient consideration, and will not permit the presumption to be overcome by oral proof to the contrary. Ellis v. Esson, 50 Wis. 138, 6 N. W. 518,

520, 36 Am. Rep. 830; Bronson v. Fitzhugh, 1 Hill, 185, 186. Sometimes, however, as in the case in hand, a release executed in favor of one wrongdoer is accompanied with the reservation of the right to sue others who were jointly concerned in the wrong, and in such cases the question has frequently arisen, how shall such an instrument be interpreted? Shall the reservation of the right to sue others be ignored, and the instrument treated as raising a conclusive presumption that full compensation for the wrong has been made, as though it were a technical release under seal, or shall the reservation of the right to sue others be taken to mean that full compensation has not been received by the injured party, and that he merely intended to agree with the released party not to pursue him further, but without releasing his cause of action against the other wrongdoers, or admitting that he has received full compensation for the injury? With reference to this question the authorities are not in accord. Some courts are disposed to hold, and have held, that when such an instrument contains apt words releasing one of the joint wrongdoers, it operates to release all, and that any clause inserted therein reserving a right to sue others after one has been released is repugnant to the release, in that it defeats or attempts to defeat, the natural legal effect of the instrument; and that it should therefore be ignored. McBride v. Scott et al. (Mich.) 93 N. W. 243, 61 L. R. A. 445; Abb v. Northern Pacific Ry. Co. (Wash.) 68 Pac. 954, 58 L. R. A. 293, and cases there cited. Other courts hold, however, that such an instrument should be given effect according to the obvious intent of the person executing it, and that it should not be treated as a technical release operating to destroy his cause of action as against all of the joint tort feasors, but rather as a covenant not to sue the party in whose favor the instrument runs. Gilbert v. Finch (N. Y.) 66 N. E. 133, 61 L. R. A. 807; Matthews v. Chicopee Mfg. Co., 3 Rob. 712; Ellis v. Esson, 50 Wis. 138, 6 N. W. 518, 36 Am. Rep. 830; Hood v. Hayward, 124 N. Y. 1, 16, 26 N. E. 331; Sloan v. Herrick, 49 Vt. 327; McCrillis v. Hawes, 38 Me. 566; Miller v. Beck (Iowa) 79 N. W. 344, 345; Price v. Barker, 4 El. & Bl. 760, 776, 777.

We are of opinion that the doctrine enunciated in the cases last cited is supported by the greater weight of authority, and is founded upon the better reasons. It has the merit of giving effect to the intention of the party who executes such an instrument, which should always be done when the intention is manifest and it can be given effect without violating any rule of law, morals, or public policy. Besides, we are not aware of any sufficient reason which should preclude a person who has sustained an injury through the wrongful act of several persons from agreeing with one of the wrongdoers, who desires to avoid litigation, to accept such sum by way of partial compensation for the injury as he may be willing to pay, and to discharge him from further liability without releasing his cause of action as against the other wrongdoers. The law favors compromises generally, and it is not perceived that an arrangement of the kind last mentioned should be regarded with disfavor. The release which was read in evidence in the case at bar plainly shows that the sum paid by Hysham was not accepted by the plaintiffs as full compensation for the injury which

they had sustained; that it was not in fact full compensation for the injury; and that they had no intention of releasing their cause of action as against Carey. Why, then, should it be given an effect contrary to the intent of the one who executed it? We perceive no adequate reason for giving it such effect, and accordingly agree with the lower court that it did not release Carey.

The judgments below are therefore affirmed.