The order of the District Court is affirmed.

---

ST. LOUIS SOUTHWESTERN RY. CO. v. PURCELL.*

(Circuit Court of Appeals, Fifth Circuit. February 15, 1905.)

No. 1,354.

1. BILL OF EXCEPTIONS—GROUNDS FOR STRIKING OUT—INCORPORATING EVIDENCE TAKEN BY PRIVATE STENOGRAPHER.

   Where the evidence in a case is embodied in bills of exceptions duly allowed and certified by the trial judge, the fact that the testimony was not taken down by order of the court or by consent, but by a stenographer employed by one of the parties, is immaterial, and is not ground for striking it from the record.

2. RAILROADS—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE.

   A person who in the daytime, after walking for a distance beside a railroad track, stepped upon the track to cross a cattle guard, and, after crossing, but while still on the track, was struck and injured by a train coming from behind her, which could have been seen approaching for a distance of 300 yards, was guilty of contributory negligence which precludes a recovery for the injury, notwithstanding her testimony that before stepping on the track she looked and listened for a train and saw or heard none, where, as clearly shown by all the other evidence, the train was then within plain sight.

   [Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1285–1291, 1305–1307.]

---

* Rehearing denied March 21, 1905.

**3. SAME—NEGLIGENCE.**

A railroad company is not chargeable with negligence which renders it liable for the injury of a woman struck by a train, where the customary and required signals were given, and, when the woman was seen by the engineer and fireman, she was walking beside the track at a safe distance, and after she stepped upon the track all possible was done to stop the train before it reached her.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1279, 1280.]

**4. HUSBAND AND WIFE—RIGHT OF ACTION FOR INJURY OF WIFE—LOUISIANA STATUTES.**

Act No. 68, p. 95, Laws La. 1902, amending Rev. Civ. Code 1870, § 2402, by providing that "damages resulting from personal injuries to the wife shall not form part of this community but shall always be and remain the separate property of the wife and recoverable by herself alone," is not retroactive, and did not affect a right of action for an injury to a wife which had become fully vested in her husband prior to its passage.

[Ed. Note.—For cases in point, see vol. 26, Cent. Dig. Husband and Wife, §§ 739, 767.]

In Error to the Circuit Court of the United States for the Western District of Louisiana.

The defendant in error filed this suit June 24, 1902, in the Second Judicial District Court of Bossier Parish, state of Louisiana, charging that the plaintiff in error (defendant below) was a corporation organized under the laws of the state of Missouri, and owned and operated a line of road through said parish of Bossier, and that on its line near Bolinger is a heavy grade; that on March 21, 1902, his wife, in going over to Bolinger, passed along a pathway through his field until she came to the railroad track, about 400 feet "from which point she walked along the pathway by the side of the track toward Bolinger until she reached the cattle guard, where she stopped, looked, and listened for a train, and, not hearing or seeing any, she walked along the track constantly used by pedestrians, with the knowledge and acquiescence of defendant company, and crossed over the cattle guard, and just as she reached the opposite side a freight train coming from the south, and without any signals whatever, struck and knocked her 20 or 30 feet, throwing her violently upon the ground, breaking her collar bone," etc. He further charged "that his said wife was without fault, and that her injuries were due solely to the fault of the defendant company in not maintaining a lookout from said train, which was rushing into a populous village, and in the failure to sound the signal for the crossings and the stations, and as warning of danger." He asked for damages in the sum of $6,200. On proper petition and bond, the case was removed by the defendant below to the United States Circuit Court for the Western District of Louisiana. The defendant below, by exception and answer, denied that the complaint set forth any cause of action or right in the plaintiff to bring suit. It denied that the injury to plaintiff's wife was caused by any negligence on its part, and charged that whatever injury she sustained was caused solely by her own negligence. It charged that she was a trespasser on its track, and her presence there was unknown to its servants in time to prevent the accident. After filing its answer, and before the case was tried, the plaintiff in error filed a plea in bar of his right to recover, and charged that he was without right to stand in judgment for, and without authority to sue for, the personal injuries done to his wife, under the laws of Louisiana, and she alone could stand in judgment for such injuries. This exception was tried and overruled, and the railway company duly excepted to the ruling of the court thereon. Thereafter Mrs. Purcell, the wife, appeared in the case, and averred that since the institution of the suit the Legislature of Louisiana had adopted Act No. 68, p. 95, of 1902, which limited the right of a married woman to sue for personal injuries received by her to her alone, and she asked to be permitted to intervene in the suit and substitute her own name as plaintiff in the case. Thereupon the defendant below filed a plea of prescription of one year in bar of her right to re-

cover, the accident having happened in March, 1902, and no suit having been brought by her until October 21, 1903. This plea of prescription was overruled by the court, to which ruling the plaintiff in error here duly excepted. The case was twice tried by a jury in the lower court, the first verdict being for one cent, and the last one for the sum of $3,000. During the trial of the case, J. S. Purcell, the plaintiff and the husband of the injured party, was called as a witness, and gave material testimony in the case. Before he was sworn, counsel for the defendant below objected to his being sworn or testifying, on the ground that he was the husband of Mrs. Purcell, the injured party, and to whom the damages in the case are due, if any, on the ground that the husband could not be a witness for or against his wife under the laws of Louisiana. During the trial the defendant below called as a witness in its behalf John Crocker, who, having testified with reference to the written statement made to him soon after the accident by Mrs. Purcell and witnessed by her husband, stating how the accident occurred, and being unable from the lapse of time to state substantially what she said to him, but having stated that he took down the written statement as dictated to him by her, counsel for the railway company offered in evidence the paper, and asked for permission for the witness to read the paper in order to refresh his memory, all of which was refused by the court, and to which ruling a formal bill of exception was taken. After all the evidence was taken, counsel for the railroad company asked the court to direct a verdict for the defendant on all the evidence, which the court refused. The charge of the judge to the jury as given was duly excepted to in several particulars, but, in the view taken of the case, it is not necessary to specify. The assignment of errors covers all the questions raised on the trial. Defendant in error moves this court to strike out from the record all the purported written testimony included therein, for the reason that it was not taken by consent of parties nor by order of the court, but was taken by the stenographer employed by plaintiff in error for his own private use and benefit.

J. D. Wilkinson, for plaintiff in error.
A. J. Murff, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). The motion to strike out the evidence in the record cannot prevail, because it is all found in bills of exception duly certified by the trial judge. Whether it was taken from the notes of a private or official stenographer or from the judge's own notes seems to be immaterial.

On the undisputed facts in the case, the railroad company was not in fault in regard to the injuries to Mrs. Purcell. When first seen by the engineer and fireman, Mrs. Purcell was approaching the railroad right of way, afterwards walking along the side of the track in "a pleasant, comfortable path," as described by herself. The engineer had given the usual and customary signals for stopping the train at Bolinger, near by, and the fireman was ringing the bell. Up to the time Mrs. Purcell went on the track to cross the cattle guard, the engineer and fireman had every reason to believe that, so far as the train was concerned, she would remain in a place of safety, and not venture on the track in front of the approaching train, and were therefore not required to either stop the train or give signals to prevent such trespass. See Matthews v. Atlantic & N. C. R. Co. (N. C.) 23 S. E. 177. As soon as she entered on the track to cross the cattle guard, both engineer and fireman resorted to all means in their power to stop the train and prevent injury.

On the evidence of Mrs. Purcell herself, it is difficult to acquit her of contributing to her own injury. She testified as follows:

"Q. You were hurt by one of the trains of the St. Louis Southwestern Railroad near Bolinger? A. Yes, sir. Q. When was that, do you remember? A. It was on the 21st day of March two years ago—the 21st of this month. Q. Mrs. Purcell, where were you going that morning? A. I was going to Bolinger. Q. What time of day was it? A. I do not know exactly. Q. Just estimate the time of day. About what time was it? A. It was somewhere between 9 and 11 o'clock. Q. In going down to Bolinger, which way were you in the habit of going? A. I always went just as I went that morning. Q. How were you going down—through the field? A. Yes, sir. Q. What other way was there to go to Bolinger? A. Not any other way except around the public road. Q. In going on the public road, you would have had to have gone through a considerable skirt of woods? A. Yes, sir; and it was further from our house to the public road than it was to the track. Q. Then it was a good deal further to go the public road than it was this way? A. Yes, sir; never went around the public road only in a vehicle. Q. Went the way you were going that morning? A. Yes, sir. Q. Your daughters were at Bolinger? A. Yes, sir; husband and daughters. I was not on the way to the boarding house; I was going to the commissary to buy some things, but I expected to stop at the boarding house. Q. In going from your house you come down the pathway? A. Yes, sir. Q. You know where that strikes the road. About how far from the cattle guard did you strike the railroad in this path? A. Yes, sir; but I did not take the railroad immediately. Q. The railway embankment was how far from the cattle guard when you came to the embankment? A. Forty or fifty yards. Q. Did you— When you came to that track, what did you do? A. I looked, and saw no one near; then I walked on down, as it was my custom. Q. You say that you saw no one near. Did you look out for the trains? A. Yes, sir; and there was no train; I heard none. Q. You looked up and down the track? A. Yes, sir. Q. What did you do then? A. I went on to the cattle gap, I reckon, in 10 or 15 feet. Of course, I did not notice the distance. Then I took the track and crossed the gap. Q. Then I understand you walked along the path? How close was that to the end of the ties? A. I do not know, sir; I reckon the path was four or five. I do not know, sir; it was a good wide path—a pleasant pathway. Q. Then how far from the cattle gap when you got on the railway track? A. I do not know; do not think it was more than eight or ten feet. Q. Eight or ten feet before you got there you stepped on the railway track? A. Yes, sir. Q. State to the jury, when you struck the railway track, whether you looked for any train? A. Yes, sir; of course, naturally I should do that, because I had the cattle gap to pass. Q. Did you see or hear any train? A. No, sir. Q. How far down the track could you see? Could you see the whistling post? A. Yes, sir. Q. You could see or hear no train? A. No, sir, nothing in view, because I noticed for that. Then after I took the track I felt perfectly safe, because I knew I had the whistling post between me and any danger. Q. When you stepped on the track, was the wind blowing? A. Yes, sir, blowing from the north. Q. How were you dressed that morning—have on a hat or bonnet? A. Bonnet. Q. Ordinary sunbonnet? A. Yes, sir. Q. Then the wind was blowing in your face? A. Yes, sir. Q. Do you remember where you were when the car struck you? A. No, sir; not exactly, but I think I was at least 15 or 20 feet or yards beyond the gap; I know I was beyond the gap. Q. What position were you in the last that you remember? A. We had to cross the cattle gap to get out of the field; then I took to the side until I could get a good stepping-off place. Q. There was an embankment there coming out of the cattle gap; could you step right off of the cattle gap? A. I walked out some distance after passing the cattle gap, because the wire fence was there, because it was low marshy place where drift had gathered there, and as I walked off of the cattle gap I gradually went to one side of the track. Q. You think you were somewhere about what distance from the cattle gap when it struck you? A. I was 20 feet or more, I know. Of course, I do not know exactly; I know that I was a good distance from the cattle gap. Q. Do you know whether or not you had started off of the track, or were you in

the middle of the track? A. No, sir; was not in the middle of the track. Q. Did you hear any bells ringing or signals given? A. No, sir; there was not any. Q. There was none? A. No, sir. Q. If the bell had been rung or whistle blown, could you have gotten off? A. Yes, sir; the gap is not a very wide one. Q. You were in the habit of going along there? A. Yes, sir. Q. You had not been in the habit of trying to beat trains across there? A. No, sir. Q. In going along that path there, would any one be in danger of being struck by the train? A. I do not know; I never tried it; I would not try it. I suppose I could have made it along there, but not on the cattle guard. Q. Would you have walked along there when a train was passing? A. No, sir; I have better sense than that. * * * Q. What was there to have prevented you seeing a train along there after it got around the curve? Was there anything? A. No, sir; nothing to prevent seeing it. Q. Nothing to prevent you from seeing them or from their seeing you? A. No, sir. Q. No trees on the embankment that would prevent them from seeing you or you from seeing them? A. No, sir, no obstruction at all."

If, as she says, before entering on the track to cross the cattle guard, she "stopped and looked and listened," she must have seen the train imminently approaching, because, under her own and the other evidence, it is clear that for 300 yards or more the track was unobstructed. Her testimony under such circumstances ought not to be credited, or taken as raising a conflict in the evidence. See, on subject, Chicago & N. W. Ry. Co. v. Andrews (C. C. A.) 130 Fed. 71 et seq., and cases there cited.

If Mrs. Purcell is mistaken with regard to stopping and looking and listening before she entered on the track to cross the cattle guard, of course her negligence is apparent. For the lack of evidence showing negligence on the part of the agents of the defendant railway company, and for the negligence contributing to her own injury, as shown from the undisputed facts and Mrs. Purcell's own testimony, the jury should have been directed to return a verdict for the defendant, and the refusal of the requested instruction to that effect requires a reversal of the judgment below.

In our opinion, Act No. 68, p. 95, of the Laws of Louisiana, entitled "An act to amend and re-enact article 2402 of the Revised Civil Code of 1870," approved June 30, 1902, and providing "that damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone," was not intended to have any retroactive effect. The act contains no repealing nor saving clause, and, if given a retroactive effect, might affect rights and interests in communities of acquets and gains running back many years. The right of Purcell to recover from the railroad company for injuries to his wife was fully vested when Act No. 68 was passed. We cannot presume, in the absence of plain language to that effect, that there was any intention to divest the rights so vested, and perhaps take away all right to recover. See article 8, Rev. Civ. Code La., and article 166, Const. La. 1898. If we give the effect claimed by plaintiff in error to Act No. 68, we should have to hold in this present case that the husband could not recover because his right had been divested, and that the wife could not recover because she came too late. This disposes of the several assignments of error based upon Act No. 68, to wit, the right of Purcell to sue, his right to testify, and the prescription of one year against the wife's right to sue.

If Purcell was the proper plaintiff to recover, and if he signed the document produced by the witness John Crocker, it would seem that such document was admissible in evidence, although Purcell swore he signed it only as a witness, and did not know of its contents. The other assignments of error need not be considered.

The judgment of the Circuit Court is reversed, and the cause is remanded with instructions to set aside the verdict and otherwise proceed according to law and in accordance with the views herein expressed.