### UNITED STATES v. DUNN et al.

### BULL HEAD OIL CO. et al. v. UNITED STATES et al.

(Circuit Court of Appeals, Eighth Circuit. March 28, 1923.)

Nos. 6027, 6028.

1. **Release ⚛⇒37—Agreement held covenant not to sue part of defendants, and not release terminating cause of action against all.**

A settlement between the United States and defendants in an action to cancel an oil and gas lease involving fraud, given by guardian of a minor Indian, wherein the government agreed not to ask or insist on recovery from certain defendants, *held* not a technical release, terminating the government's cause of action against all the defendants, but a covenant not to sue part of them, and therefore no defense to an action against the other defendants.

2. **Indians ⚛⇒16(3)—Settlement by government held confirmation of oil lease.**

A compromise and settlement made by the United States, through which it received moneys for minor Indian, had the effect of confirming an oil lease of the Indian's land, and rendered the lease valid, though guardian of minor Indian was guilty of fraud in retaining secret interest in the lease.

3. **Fraud ⚛⇒25—Injury essential.**

Fraud, without damage, is not actionable, at law or in equity.

4. **Appeal and error ⚛⇒1138—No reversal for improper refusal to reform instrument, where parties compromised after appeal.**

Cause will not be reversed, because lower court improperly refused to reform an instrument, where, after appeal, the parties entered into a compromise and settlement which rendered formal correction of the instrument unnecessary.

Appeals from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit by the United States against T. H. Dunn, the Bull Head Oil Company and others. From the decree, plaintiff appeals and certain defendants file cross-appeal. Affirmed.

W. A. Ledbetter, Sp. Asst. U. S. Atty., of Oklahoma City, Okl. (Frank Lee, U. S. Atty., of Muskogee, Okl., and Ledbetter, Stuart, Bell & Ledbetter, of Oklahoma City, Okl., on the brief), for the United States and others.

George S. Ramsey, of Muskogee, Okl., and W. G. Davisson, of Ardmore, Okl. (W. B. Johnson, of Ardmore, Okl., Edgar A. De

---

⚛⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Meules, of Tulsa, Okl., and Malcolm E. Rosser and Villard Martin, both of Muskogee, Okl., on the brief), for Dunn, Bull Head Oil Co., and others.

Before LEWIS, Circuit Judge, and POLLOCK and SYMES, District Judges.

LEWIS, Circuit Judge. This suit was begun in September, 1919, to cancel an oil and gas lease given to Dunn and Gillam by the guardian and the curator of Allie Daney, a minor full-blood Choctaw Indian. The lease bears date August 19, 1913, and was signed at that time by A. N. Thomas as guardian. In January following it was signed by J. J. Eaves as curator. Eaves had given a lease to J. S. Mullen on the forty acres and other lands belonging to the minor, in August, 1913. Thomas and Eaves each claimed the right to represent the minor. Eaves had been appointed her curator by the U. S. Court for the Southern District of Indian Territory in November, 1905, and on statehood that court transmitted the curatorship record to the county court of Love County. Thomas was appointed her guardian by the county court of Leflore County in July, 1911. The county court of Love County approved the lease given by Eaves, and the county court of Leflore County the one given by Thomas. The two leases came to the Indian Superintendent for his recommendation for approval by the Secretary of the Interior at about the same time, and that brought on a controversy between Dunn and Gillam and Mullen as to whether Thomas or Eaves represented the minor and had authority to give a lease. The superintendent declined to pass upon the question pressed on both sides with apparent merit, and finally recommended that the lessees in the two leases compromise the question by each taking a half-interest and procuring the signature of both Thomas and Eaves to one lease. At first the parties were unable to agree, but on the superintendent's notification that he would recommend that neither lease be approved his suggestion was accepted. Oil wells were being drilled near the tract, and all interested parties realized that the land would be drained of any oil that might be under it unless it was speedily developed. Eaves then signed the lease given by Thomas. During the controversy between Dunn and Gillam and Mullen developments in the vicinity of the 40-acre tract were being made. The superintendent visited the field. He wanted the Daney land protected from drainage. He told the contending parties that it made no difference to him whether Eaves signed the Dunn and Gillam lease or Thomas signed the Mullen lease. The Bull Head Oil Company was organized and the lease assigned to it, on agreement that the lessees would take for their interest an equal amount of stock. Its capital was fixed at $18,000. An additional five acres adjoining the tract, not belonging to the minor, was taken into the company. The lessees each took 8,000 shares and the parties who put in the adjoining five acres were compensated out of the remaining 2,000. The lease and its assignment were approved by the secretary. Operations under the lease resulted in large production of oil. In addition to a royalty of 12½ per cent. of the gross proceeds of all crude oil extracted to be paid to the minor or her repre-

sentative under the Thomas lease the superintendent, after examination concluded that $2,000 should be exacted as a bonus for the lease, and this was paid. The complaint joined as defendants with the Bull Head Oil Company, Dunn and Gillam and their wives, Mullen and others who were stockholders in the company. It charged that the lease was voidable because, as it was alleged, Thomas the guardian, had reserved a secret interest in it, and it not only prayed that the lease be canceled but that the defendants be held to account for all oil and gas that had been taken under it, and that the minor be adjudged to be the owner of all the company's stock. On trial the court found, and there was evidence to sustain the finding, that Thomas, under a secret agreement which he made with Dunn and Gillam, had reserved an interest in the lease. It was shown that they later paid him $3,500 and gave him a Saxon automobile for that interest. The court, however, further found that Eaves was the minor's legal curator, that Thomas was not her guardian and that Eaves' execution of the lease which had been theretofore signed by Thomas, and its approval by the county (probate) court of Love County rendered it a valid instrument, when later approved by the secretary. It further found that the agreement between Dunn and Gillam and Thomas constituted legal fraud on the part of defendants Dunn and Gillam, but that it was not actionable because Thomas was without authority and power to give a lease; and thereupon it dismissed the bill.

After appeal was taken the plaintiff settled the controversy with all defendants except the defendant Dunn and his wife, who had received some of the stock as a gift from her husband, and the defendant Gillam and his wife, who had received some of the stock from her husband. Appellees, Dunn and wife and Gillam and wife, move to dismiss the appeal. A copy of the settlement agreement, bearing the approval of the secretary and one of the assistant attorneys general, accompanies the motion, from which it appears that it was made on the agreement of the Bull Head Oil Company to pay $45,000 to the minor and $12,500 to plaintiff's attorneys as their fees for their services in the cause to the date of settlement, and in consideration thereof it was agreed that—

"the United States will neither ask nor insist upon a reversal of said cause or a recovery against the Bull Head Oil Company or against any of the defendants in said cause, save and except T. H. Dunn, N. E. Dunn, J. Robert Gillam and Mrs. J. Robert Gillam, and that it will not insist upon any judgment impressing a trust upon any of the stock in Bull Head Oil Company heretofore owned by J. Robert Gillam or Mrs. J. Robert Gillam and assigned to Jake L. Hamon, but will insist upon a money judgment against them for whatever amount the testimony may show should be awarded."

[1] The ground of the motion is that the cause of action was bottomed on a tort and that the settlement released all defendants from liability. Under the rule announced by this court in Carey v. Bilby, 129 Fed. 203, 63 C. C. A. 361 (see also Barnett v. Conklin [C. C. A.] 268 Fed. 177), the motion will be overruled as to the moving appellees, but as the facts on which the motion is based are confessed the issue as to all other appellees has become moot, and as to them plaintiff's appeal is ordered dismissed.

[2, 3] Conceding that Thomas was the lawful guardian and the only person authorized to act in behalf of Allie Daney, and that the lease given by him to Dunn and Gillam was subject to cancellation for the fraud charged, that right in behalf of the minor could not be enforced against an innocent assignee for value. The lease was immediately assigned at the suggestion of the Indian Superintendent to the Bull Head Oil Company, and the evidence does not justify a finding or conclusion that any of the parties who originally took stock in that company, nor those that have since purchased, had any knowledge of the fraudulent transaction, except Dunn and Gillam. It may also be conceded as a sound principle that Thomas can be held to account to the minor for all that he received for the secret interest which he had in the lease. The compromise and settlement made by the plaintiff through which it received $45,000 for the minor had the effect of confirming the lease; and if the plaintiff has a right now to continue the litigation against Dunn and Gillam, that right is based on their alleged fraudulent conduct, and is a claim for damages on account of the fraud. There is no testimony in the record which supports a conclusion that the Thomas lease was made for an inadequate consideration and that it did not provide fair and reasonable returns to the ward. The bonus of $2,000 for the lease was fixed by the Indian Superintendent after an examination for that purpose, both by himself and an inspector whom he sent into the field, as a reasonable amount to be paid for the privilege of obtaining the lease. Several months had passed since Thomas had executed the lease, and the situation in the field had changed. The royalties to be paid are not shown to be unreasonably low, nor that they are not fair, reasonable and just. Up to the time of the trial the minor's estate had received in royalties $72,515. Since the trial she has gotten $45,000 more through compromise with the Bull Head Oil Company. If the superintendent had failed in reconciling conflicting claims under the two leases it is not at all probable, and it is not shown that anyone would have taken a lease on better terms for the minor than that given by Thomas, either from him or from Eaves. In the meantime the land would have been drained of its oil deposits. None of the defendants can be charged with the complicated dual representation of the minor. Damages are now asked against Dunn and Gillam for fraudulent participation in taking the lease from Thomas. It is an established principle that fraud without damage is not actionable, either at law or in equity, and the facts in this case do not show that the minor sustained any damage on account of the fraudulent conduct charged against Dunn and Gillam. Clarke v. White, 12 Pet. 178, 196 (9 L. Ed. 1046): "In equity, as at law, fraud and injury must concur, to furnish ground for judicial action; and mere fraudulent intent, unaccompanied by any injurious act, is not the subject of judicial cognizance." Garrow v. Davis, 15 How. 272, 277 (14 L. Ed. 692): "To entitle themselves to relief, the complainants must prove fraud and damage; or, to state the principle less abstractly, they must show that their agent disposed of what he was employed to sell, for less than its value, and that he did this fraudulently." See also Smith v. Richards, 13 Pet. 26, 10 L. Ed. 42; Ming v. Woolfolk, 116 U. S. 599, 602, 6 Sup. Ct. 489, 29 L. Ed. 740; Marshall v. Hub-

bard, 117 U. S. 415, 6 Sup. Ct. 806, 29 L. Ed. 919; Southern Development Co. v. Silva, 125 U. S. 247, 250, 8 Sup. Ct. 881, 31 L. Ed. 678; Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279; Angle v. Ry. Co., 151 U. S. 1, 10, 14 Sup. Ct. 240, 38 L. Ed. 55; Sigafus v. Porter, 179 U. S. 116, 21 Sup. Ct. 34, 45 L. Ed. 113; Rockefeller v. Merritt, 76 Fed. 909, 914, 22 C. C. A. 608, 35 L. R. A. 633; Stratton's Independence v. Dines, 135 Fed. 499, 458, 68 C. C. A. 161; Pittsburgh L. & T. Co. v. Life Ins. Co. (C. C.) 140 Fed. 888, 896; Richardson v. Lowe, 149 Fed. 625, 633, 79 C. C. A. 317; Pomeroy's Eq. Jur. vol. 6, § 667; Story's Eq. Jur. (14th Ed.) vol. 1, §§ 268, 289, 290; Bispham's Principles of Equity (5th Ed.) § 217. Dunn has retained his stock; Gillam disposed of his before this suit was instituted. It is argued that Dunn, as to the stock which he holds, should be declared trustee for the minor, and that Gillam should account for what he received for his shares. But the claim against each is in principle the same,— damages for fraud. On plaintiff's appeal the decree is

Affirmed.

[4] The lease originally made out to Dunn and Gillam, which on settlement was signed by Eaves, does not contain the name of Eaves as curator in the granting and demising clauses of the lease. There were no pleadings by any of the defendants asking the court to reform the lease in that respect, but at the time the court announced its conclusion and directed that the complaint be dismissed, the defendants in open court moved for reformation and correction, which was denied, and from that the defendants took a cross-appeal. Inasmuch as the compromise and settlement with the Bull Head Oil Company after appeal confirmed the leasehold in it, we see no reason for its formal correction. On cross-appeal the decree is

Affirmed.