Kenneth MARKWELL and William Hartz, Partners, d/b/a Markwell and Hartz, Contractors, Plaintiffs,

v.

LOCAL #978, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, and Carpenters' District Council of Greater Kansas City and Vicinity, Defendants.

Civ. A. No. 1713.

United States District Court
W. D. Missouri, S. D.
March 29, 1963.

Clarence Woolsey, Springfield, Mo., for plaintiffs.

Gibson Langsdale, Kansas City, Mo., for defendants.

JOHN W. OLIVER, District Judge.

This case now pends on defendants' motion for judgment on the pleadings or for summary judgment. That motion was filed in accordance with the procedure agreed to at pre-trial conference. A short statement of this case's history will sharpen the legal question raised by defendants' motion.

It was first tried before a jury in a trial presided over by the late Judge Smith. Judgment on plaintiffs' verdict was entered against three defendants in the amount of $50,000. The two defendants here involved appealed to the Court of Appeals on October 26, 1961. On December 21, 1961 plaintiffs and the third defendant, Local #676, International Hod Carriers, Building and Common Laborers Union of America, AFL–CIO, against whom judgment was initially rendered, filed in this case a document captioned "partial satisfaction of judgment". That document, executed by plaintiffs and Local #676, recited in substance that those two parties desired to settle, compromise and adjust the judgment only as it affected that defendant. It also recited that in consideration of the payment of $15,000 cash plaintiffs discharged defendant Local #676 from all effects of the judgment and that defendant Local #676 was released from further liability. The partial satisfaction of judgment was patterned upon, and, in large part, copied from the agreement set forth in Barnett v. Conklin, 8th Cir., 1920, 268 F. 177, 180, cert. denied 255 U.S. 570, 41 S.Ct. 375, 65 L.Ed. 791 (1921).[1]

The appeal of the remaining defendants went forward. On July 11, 1962, as Case No. 16962, entitled Local #978 United Brotherhood of Carpenters and Joiners of America, AFL–CIO, v. Markwell, 8th Cir., 1962, 305 F.2d 38, the Court of Appeals reversed the judgment and remanded the cause for a new trial.

After the first pre-trial conference following remand, plaintiff filed an amend-

1. A copy of the partial satisfaction of judgment is attached as an appendix to this Memorandum and Order.

ed complaint on November 14, 1962. In accordance with procedure agreed upon at pre-trial, defendants filed a joint answer of defendants in which they set forth as a separate affirmative defense the partial satisfaction of judgment. That answer alleged that "plaintiffs, by their own voluntary acts, have caused and created a complete accord and satisfaction, and relinquishment and release, as a matter of law and fact, of any claims or causes of actions against these defendants".

Plaintiffs' reply accordingly admitted the basic facts alleged in the separate affirmative defense, but alleged that the "partial satisfaction of judgment was properly and legally made and that it did not and does not in any way prevent plaintiffs from proceeding against these defendants in the trial of this case as directed by the Eighth Circuit Court of Appeals".

Plaintiffs also alleged in that reply that certain statements made during the argument on appeal by defendants waived any alleged right to raise the question presented in their separate affirmative defense.[2] Defendants then, again in accordance with the agreed pre-trial procedure, moved for judgment on the pleadings, or, in the alternative, for summary judgment. Because there are thus no disputed facts, the motion raises a pure legal defense and is therefore ripe for decision. The parties have fully briefed the questions involved.

■ Jurisdiction over plaintiffs' cause of action and plaintiffs' alleged rights is conferred and established by §§ 301 and 303 of the Labor Management Relations Act of 1947 (29 U.S.C.A. § 185 and § 187). We are therefore dealing with matters of federal labor law and "incompatible doctrines of local law must give way to principles of federal labor law". Local 174, Teamsters etc. and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 102, 82 S.Ct. 571,

576, 7 L.Ed.2d 593 (1962). See also Atkinson v. Sinclair Refining Co., 370 U.S. 238, 345, 348, 82 S.Ct. 1318, 8 L. Ed.2d 462 (1962) and cases cited therein. The State court cases therefore have persuasive, as distinguished from binding effect. That question, however, is not of real importance in regard to this case because there is no real conflict between the State and federal law.

■ Defendants seek an application of the unquestioned general rule that "the satisfaction of a judgment against one of two joint tortfeasors bars an action against, or the enforcement of another judgment against another tortfeasor arising out of the same wrong, injury, or cause of action". Defendants concede that "if the Court of Appeals had affirmed the judgment, [the] instrument executed by and between the plaintiffs and the joint judgment debtor, Local #676, would have operated only as a partial satisfaction of the judgment, and a full release of Local #676, and these defendants would have remained bound by the judgment and liable for the payment of the balance thereof".

But defendants quite correctly state that this is not what happened. The judgment of the trial court was reversed. Defendants therefore argue that in spite of what may have been said in the release agreement, "plaintiffs made their election and are bound by the consequences". Defendants emphasize that plaintiffs "knew or should have known that there was a possibility that the judgment against these defendants would be reversed" and contend that "the consequences" of plaintiffs having settled with the non-appealing defendant is that this Court, as a matter of law, must hold that plaintiffs also settled their remaining claims against the remaining defendants.

On the facts, defendants argue that the reversal of the initial judgment of the first trial left outstanding a judg-

2. The parties filed a stipulation concerning a colloquy between Judge Matthes and Attorneys Craig and Lovett that occurred during the argument of the appeal in the

Court of Appeals. Our view of the case makes it unnecessary to reach the question of alleged waiver.

ment against Local #676 and that the partial satisfaction of that judgment must call into play the principle of law that the satisfaction of a judgment against one of two tortfeasors bars any additional action against any other joint tortfeasors arising out of the same cause of action. Defendants spell out their not uncomplicated thesis by contending that "the fact that the Court of Appeals remanded the case for a new trial as to these defendants has no effect whatever on the former judgment [rendered against Local #676]". Defendants point out that the judgment against Local #676 was in fact compromised and settled. Defendants therefore argue that "when the Court of Appeals reversed the judgment as to these defendants, that action created the same situation as if there had been no judgment at all against these defendants", and that the only judgment that continued to remain alive after reversal "was the judgment entered against Local #676"; that "plaintiffs by their voluntary settlement and compromise had completely released Local #676" from that judgment, and that "the reversal of the judgment against these defendants caused the 'partial satisfaction' of the judgment to become a full satisfaction since [it was] the only judgment remaining".

We cannot accept defendants' somewhat sophistical argument. Certainly many of the cases in the annotations in 27 A.L.R. 305, 65 A.L.R. 1087, and 166 A.L.R. 1099 entitled "Payment of, or proceeding to collect judgment against one tortfeasor as release of others" show that various courts have used both a scholastic approach and schoolmen's language concerning the question there annotated. The cases discussed in the lengthy annotation in 53 A.L.R. 1420 on the related subject of "Release of one of several joint or joint and several contract obligors as affecting liability of other obligors" also reflect the general confusion in the development of the rules of decision.

The summary of the latter annotation at page 1470 notes that the old common law rule has not in fact been applied with its original harshness, and that, apart from corrective legislation, many courts now give effect to the intention of the parties and thus recognize express reservations of rights against persons not included in a release agreement. It is also there noted that such courts have even construed agreements that are in the form of a release as being in substance a covenant not to sue in order that the rights of parties to litigation not be prejudiced by their attorneys' ignorance of the operation of a technical rule of the old common law.

On page 1471 of that summary, the annotators conclude with the statement that "with all due respect to the courts that evolved the rule that a release of one co-obligor discharges the others, it is suggested that as the reasons for the rule have long since disappeared, the courts should * * * wipe out the distinctions between covenants not to sue, and releases based upon the form the agreement takes—and thus relieve this subject of the confusion that now exists, and at the same time effect a rule that really gives effect to the intention of the parties".

Section 1002 of the article on Judgments in 30A Am.Jur. 861 notes that the hopes of the annotators have been largely realized. It is there stated that "the trend of modern authority tends to modify the strict common-law rule by which joint debtors were often released by an inadvertent or ill advised release of one of them. The modern view is that the intent of the parties, as expressed by their acts and particularly their writings, should be considered in determining the question".

My controlling court has long been consistent with the modern view that the intent of the parties must be definitively considered. Carey v. Bilby, 8th Cir., 1904, 129 F. 203, is perhaps the leading case in the Eighth Circuit. It held that a release of a joint tortfeasor before judgment showed that the consideration received was not accepted as full compensation; that it was not in

fact full compensation; and that the plaintiffs had no intention of releasing their cause of action against the other joint tortfeasor. "Why, then", Judge Thayer asked, "should it [the release agreement] be given an effect contrary to the intent of the one who executed it?" Because the court could "perceive no adequate reason for giving it such effect", it held that the trial court had correctly determined that the agreement did not release the other joint tortfeasor.

Barnett v. Conklin, supra, the case from which the partial satisfaction document was in large part copied, took a similarly realistic view of a settlement agreement entered into after judgment. In reply to an argument fundamentally similar to that presented in this case, the court held that "we cannot follow counsel for appellant in his contention that the satisfaction of the judgment as to J. W. Ground, in view of the language of the stipulation, constituted a satisfaction of the judgment as to the other defendants".

We have precisely the same language of the settlement agreement there involved before us, plus some more. Plaintiffs in this case, out of the caution that always seems to compel lawyers of our day to use more words than the lawyers of our grandfather's day, added to paragraph 3 of the Barnett release agreement the following language:

"\* \* \* [I]t being the express intention of the parties hereto that Markwell and Hartz Contractors, plaintiff, retains the right to pursue, enforce and collect the balance of the judgment rendered herein against the other defendants, and that this agreement shall in no way be taken as a release or discharge of the other defendants, and shall take effect only as, and constitute only a partial payment only on said judgment".

It is true, of course, that Barnett dealt with a case in which the judgment of the trial court was ultimately affirmed, whereas we are dealing with a judgment that was ultimately reversed. But we cannot, however, believe that the subsequent factual development in Barnett requires us to revive and apply the harshness of the old common law rule first rejected by our controlling court in 1904 in Carey v. Bilby, supra.

■ We believe that we are required, as did the court in Barnett, to determine the intention of the parties at the time the release agreement was executed. We do not believe that it can be said that plaintiffs intended to do anything more in this case than to release Local #676 in consideration of its $15,000 payment and that they intended at that time to follow precisely the procedure approved in Barnett. It must not be overlooked that in both this case and in Barnett the plaintiff settled with the joint tortfeasors *before* the appeal from the judgment was decided.[3] It is therefore apparent that the Court of Appeals could have in no way predicated its opinion in Barnett on any theory that the affirmance or the reversal of the judgment had any real legal significance.

■ In view of that procedural history, we believe that the rules announced and applied in both Carey and Barnett require that we hold that the partial satisfaction of the judgment of the trial court before the Court of Appeals reversed did not have any legal effect on plaintiffs' rights against the present defendants.

The rule and rationale of those two decisions were again applied by the Eighth Circuit in United States v. Dunn, 8th Cir., 1923, 288 F. 158, in a case in which a settlement with several, but not all, the joint tortfeasors was made after judgment and pending appeal. See also and compare Fowler v. Washington Loan & Trust Co., 1923, 53 App.D.C. 224, 289

---

3. The sequence of the appeals may be ascertained by an examination of Barnett and of the affirmance of the judgment on the merits reported as Porto Rico Mining Co. v. Conklin, 8th Cir., 1921, 271 F. 570.

F. 622, for a case in which the settlement agreement with one joint judgment debtor was held to have released another judgment debtor because the words used by the parties were held to have evidenced such an intent.

The Eighth Circuit, in Little Rock Packing Co. v. Massachusetts Bond. & Ins. Co., 8th Cir., 1959, 262 F.2d 327, in a case involving the effect of the satisfaction of a judgment, made reference to and relied upon the Restatement of Judgments as adopted and promulgated by the American Law Institute. In a field of law where the statement of legal principle has been anything but precise, we believe that reference and acceptance of the same authority will state most clearly the principles that we shall apply at the second trial of this case.

Section 94 of the Restatement of Judgments states the general rule regarding the effect of a judgment against one of several tortfeasors:

"* * * [T]he rendition of a judgment in an action against one of two or more persons liable for a tort, breach of contract, or other breach of duty, does not affect the claim against the other".

Comment b to Section 94 of the Restatement of Judgments makes clear that the rule stated in that section "deals only with the effect of the rules as to res judicata" and that "the effect of a judgment for or against one of several tortfeasors is to be distinguished from the effect of a voluntary release of one of them, since such a release may have the effect of discharging the claim against the others", making parenthetical reference to Section 885 of the Restatement of Torts to support the latter quoted statement.

Section 885 of the Restatement of Torts, to which reference was made, states:

"§ 885. Effect of Release of or Payment by One of Several Tortfeasors.

"(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document.

"(2) A covenant not to sue one tortfeasor for a harm does not discharge any other liable for the harm.

"(3) Payments made by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment; the extent of the diminution is the amount of the payment made, or a greater amount if so agreed between the payor and the injured person."

The historical note at the head of Comment b to subparagraph (1) and (2) of Section 885 covers much the same ground covered in the cases we have discussed and is consistent with the rules of decision there announced. That comment states:

"The rule stated in Subsection (1) is a modification of earlier common law rules. By those rules, a release given to one of a number of persons who has co-operated in causing a tort or who has failed in the performance of a common duty discharges the others, irrespective of the intent of the parties, although a covenant not to sue one of the parties has no effect upon the liability of the others to the injured person. This arbitrary distinction was based in part upon the limitation of joint liability to those who had co-operated or who had failed in a common duty and in part upon the fact that releases were given under seal. It frequently resulted in the unintended and unpaid-for discharge of one of the tortfeasors.

The rule is not consistent with the modern American point of view."

The statement of the rationale of Section 885 of the Restatement of Torts is but a lucid explanation of the rationale we apply in this case as we believe it established by the Eighth Circuit cases. In contrast with the application of the earlier harsh and technical common law rule, Comment c to Section 885 of the Restatement of Torts explains that "today releases are effective if given for consideration although not under seal and are therefore regarded as contracts rather than grants". That Comment continues:

"Furthermore, the tendency is to give effect to the intent of the parties to a transaction rather than to regard as controlling the formalities with which the transaction is executed. The law has now developed so that it is possible to carry out the intent of the parties as expressed in the document by which the release is given."

More pertinent to the foreseeable questions that will arise at the second trial of this case is Comment e on subparagraph (3) of Section 885 of the Restatement of Torts. That comment states in part that:

"Payments made by one of the tortfeasors on account of the tort either before *or after* judgment, diminish the claim of an injured person against all others responsible for the same harm. *This is true although it was agreed between the payor and the injured person that the payment was to have no effect upon the claims against the other.* If the payment is made as full satisfaction for a specified item of damage, the claim against the others is terminated with respect to that item. *If it is agreed that the payment is to satisfy the payor's proportion of the total claim, the claim against the others is diminished in that proportion,* if this is greater than the amount paid; if the proportion is less than the amount paid,

the claim against the others is diminished by the amount paid, irrespective of the agreement" (Emphasis ours)

Section 886 of the Restatement of Torts separates the factual situation of a settlement after judgment from a settlement before judgment. In a case involving a settlement after a judgment, as distinguished from a settlement of a cause of action before judgment, a real legal distinction must be recognized to exist between a partial satisfaction of a judgment and a complete satisfaction of a judgment. The general rule relating to the satisfaction of a judgment against one of several joint tortfeasors is stated as follows in Section 886 of the Restatement of Torts:

"The discharge or satisfaction of a judgment against one of several persons each of whom is liable for a single harm discharges each of the others from liability therefor."

Comment d to that section makes clear that the "discharge or satisfaction of a judgment", as those words are used in Section 886, must be a full and a complete one. That comment also recognizes that a particular plaintiff's claim against the remaining defendants, as a matter of law, is diminished by the amount received from the defendant with whom that plaintiff settled. Comment d to Section 886 of the Restatement of Torts states:

"d. Partial satisfaction. A partial satisfaction of a judgment operates to diminish the amount of a claim against other judgment debtors in the same way as payment by a person liable for a harm diminishes claims, whether or not based upon judgments, against others also liable for the harm (see § 885 (3))."

The distinctions carefully delineated in the Restatement of Torts are reiterated in substantially the same language in the applicable rules stated in the Restatement of Judgments. Section 95 of the Restatement of Judgments is almost identical with Section 886 of the Re-

statement of Torts. The former section states:

"The discharge or satisfaction of a judgment against one of several persons each of whom is liable for a tort, breach of contract, or other breach of duty, discharges each of the others from liability therefor."

And, as now should be anticipated, Comment e to Section 95 of the Restatement of Judgments combines what was stated in Comment d to Section 886 and Comment e to subsection (3) of Section 885 of the Restatement of Torts. Comment e to Section 95 of the Restatement of Judgments states:

"e. Partial satisfaction. A partial satisfaction of a judgment operates to diminish the amount of a claim against other persons liable for the same harm or upon the same obligation in the *same way* that a payment *before judgment* diminishes the claim. *This is true although it was agreed between the payor and the plaintiff that the payment was to have no effect upon the claims against the other.* If the payment is made as full satisfaction for a specified item of damage, the claim against the others is terminated with respect to that item. *If it is agreed that the payment is to satisfy the payor's proportion of the total claim, the claim against the others is diminished in that proportion,* if this is greater than the amount paid; if the proportion is less than the amount paid, the claim against the others is diminished by the amount paid, irrespective of the agreement. (Emphasis ours)

 We have emphasized the portions of the synchronized language in the comments to the cited sections in the Restatement of Torts and Judgments because of their direct applicability to this case on second trial. Under the modern view, no party is to be permitted to say, if the instrument of settlement is objectively clear, that a plaintiff intended to release all tortfeasors when he obviously intended to release only one. In quite similar fashion, the modern view does not permit a plaintiff who has accepted a substantial consideration from one joint tortfeasor, either before or after judgment, to ignore that fact of litigation life and to later contend that his claim against the unreleased tortfeasors was not diminished by the extent of the consideration accepted. On second trial, we will therefore consistently rule that plaintiff in this case will be entitled to recover damages only in excess of the $15,000 received from Local #676.

What we have said indicates our ruling on defendants' pending motion. That motion should be, and is hereby, overruled. Mention must, however, be made of other matters that relate to the further disposition of this case.

In our order of February 12, 1963, in which we required the briefs in connection with this motion to be filed by March 11, 1963, we also noted that two other questions of law were made apparent at prior pre-trial conferences. The first question relates to the effect that plaintiff Hartz' death may have on this litigation in regard both to the admissibility on second trial of his testimony as transcribed in the record of the first trial and in regard to its impact upon a partnership cause of action. The second broad question relates to the scope of issues open for trial under the mandate of the Court of Appeals. Counsel are also familiar with the discussion had at pre-trial on March 13, 1963, in regard to possible additional discovery and in regard to the question of whether counsel wanted to submit the case on the basis of the record made at the first trial.

In order therefore to further simplify the issues, and to aid in the ultimate disposition of the case, the parties shall:

1. On or before April 12, 1963, confer and determine whether they want to stipulate to submit the case for second trial on the basis of the record made at the first trial. In the event the parties elect that course of action, the Court will immediately schedule a further pre-trial

conference in order that the terms and conditions of the stipulation be established in a further pre-trial order. The Court indicates its willingness to arrange an informal conference for the purpose of further discussing this question should counsel desire, but such conference, of course, must be held before April 12, 1963.

2. In the event the parties do not agree to so stipulate, all contemplated discovery by either party, as discussed at the pre-trial conference on March 13, 1963, shall be completed on or before April 26, 1963. In that connection, plaintiffs will advise defendants as to plaintiffs' intention to agree to waive any right to introduce evidence on subjects that may avoid the necessity of defendants making further discovery. Should further discovery be necessary, the parties have agreed at pre-trial to waive notice of depositions and to accommodate each other as to when depositions may be taken.

3. Plaintiff shall file its brief on the two remaining questions set forth in paragraph 1 of our Memorandum and Order of February 12, 1963, as above discussed, and its brief on any other anticipated legal questions that might arise at the time of trial on or before April 30, 1963.

4. Defendant shall file a reply brief to the brief required of plaintiff by the preceding paragraph on or before May 17, 1963.

5. Plaintiff shall also file by April 30, 1963 a further pre-trial memorandum (the Court has not overlooked plaintiffs' general pre-trial memorandum filed before the first pre-trial conference) in which it will:

(a) List the witnesses by whom it intends to prove its cause of action, setting forth in summary form the nature of the testimony that will be presented by each witness; and

(b) List its witnesses by whom it expects to prove damages in excess of $15,000, together with a summary of their intended testimony. Plaintiffs will also serve a copy of such exhibits as may be offered in evidence. Such exhibits shall be accompanied by an explanation of the underlying data upon which they are based, by a statement as to how they were prepared, and by a statement of the qualifications of the particular witness who will be called to identify and introduce each exhibit.

6. Defendants shall on or before May 17, 1963 file a similar additional pre-trial memorandum in which they shall list the witnesses they expect to call and shall set forth in similar summary manner the nature of their intended testimony. If defendants intend to introduce testimony concerning plaintiffs' damages, it will list its witnesses, summarize their testimony, and explain its exhibits in similar fashion as required of plaintiff by the preceding paragraph.

7. All pre-trial memoranda and briefs shall be served on opposing counsel and filed with the Clerk at Kansas City. The time schedule set forth in this order will not be modified except on motion and for good cause shown.

8. The Court will schedule a further pre-trial conference at the earliest possible time convenient to counsel, consistent with further developments had pursuant to this Memorandum and Order. As indicated at pre-trial, we will also attempt to give counsel a special trial setting in view of the age of this case.

It is so ordered.

## APPENDIX

### PARTIAL SATISFACTION OF JUDGMENT

WHEREAS, Markwell and Hartz, Contractors, a partnership composed of Kenneth Markwell and William Hartz, the above named plaintiff, did on or about the 16th day of October, 1961, recover a judgment in the above entitled cause for $50,000.00 and costs of suit

against the above named defendants and each of them, and

WHEREAS, Local 676 International Hod Carriers Building and Common Laborers Union of America, AFL–CIO, hereinafter called Local 676, one of the above named defendants, desires to settle, compromise and adjust the above mentioned judgment insofar as same affects Local 676, by the payment of a portion thereof, and

WHEREAS, Markwell and Hartz, Contractors, the above-named plaintiff, is willing and has agreed to accept the amount hereinafter mentioned as a partial payment on said judgment:

NOW THEREFORE, in consideration of the payment by Local 676 to Markwell and Hartz, Contractors, of the sum of Fifteen thousand ($15,000.00) Dollars cash in hand, the receipt of which is hereby acknowledged, it is agreed as follows:

1. That Markwell and Hartz, Contractors, do hereby acknowledge payment by the said Local 676 of the sum of $15,000.00 on said judgment and discharges and releases all lands, tenements, chattels, goods, wares, merchandise and property of every kind and description now owned by the said Local 676 or which may be hereafter acquired by said Local 676, from any and all liens and effects of said judgment, and shall not pursue the said Local 676 further as to the collection of the balance of said judgment or enforce the payment of said balance out of any property of Local 676 by any process whatsoever in said cause, or by any supplementary or independent action or proceeding.

2. That the said Markwell and Hartz, Contractors, hereby specifically retains and reserves unto it, its heirs, administrators, executors, assigns or successors, each, all, and every right, privilege or remedy given said partnership by law or equity to pursue, enforce and collect the balance of said judgment against and from the other defendants in said cause, and this compromise settlement and agreement shall not be taken, held, or construed in any manner whatsoever as a release or discharge of said other defendants from the force, effect and lien of said judgment.

3. That it is the intention of the parties hereto that said payment of $15,000.00 made by Local 676 shall constitute a partial payment only on said judgment and be held, construed and taken as a mere credit thereon for that amount, and not as a release, discharge or satisfaction thereof, or of the cause of action upon which said judgment is based as to said other defendants, it being the express intention of the parties hereto that Markwell and Hartz, Contractors, plaintiff, retains the right to pursue, enforce and collect the balance of the judgment rendered herein against the other defendants, and that this agreement shall in no way be taken as a release or discharge of the other defendants, and shall take effect only as, and constitute only a partial payment only on said judgment.

This agreement shall become effective and binding upon the parties hereto on or from the date of the payment above mentioned.

IN WITNESS WHEREOF, the parties have hereunto set their hands at Springfield, Greene County, Missouri, this 21st day of Dec., 1961.

LOCAL 676, INTERNATIONAL HOD CARRIERS, BUILDING AND COMMON LABORERS UNION OF AMERICA, AFL-CIO

By /S/
 Attorney for above named defendant