CELIA CLARK, Appellant, v. UNION ELECTRIC LIGHT & POWER COMPANY.

Division Two, July 5, 1919.

1. **JOINT TORTFEASORS: Release of One: Effect at Common Law.** An instrument releasing one of several joint tortfeasors from liability for a tort, executed prior to the Act of March 23, 1915, Laws 1915, p. 269, is to be construed in the light of the common law as it existed in this State prior to the passage of said act, and under the common law a release of one joint tortfeasor operated to release all of them

2. ——: ——: ——: Covenant Not To Sue. Where the plaintiff by written instrument does "hereby release and forever discharge" one joint tortfeasor "only from all suits, actions or causes of action which I have or might have against" said tortfeasor, a subsequent clause by which plaintiff "expressly refuses and declines to release" the other tortfeasor "from any claim for damages which I may have or might have against it" and whereby plaintiff "expressly reserves the right to enforce any and all claims that I may or might have against" said other tortfeasor did not destroy the release thus clearly made, but the instrument operated to release all the joint tortfeasors.

3. ——: ——: ——: ——: Rule. While the courts construe an instrument settling a claim for damages with one tortfeasor as a covenant not to sue wherever its language will permit, it cannot be so construed when it is clear from its unambiguous language that it was not intended as a covenant not to sue.

Appeal from St. Louis City Circuit Court.—*Hon. William A. Kinsey*, Judge.

Affirmed.

*Lashly & Barnett* and *George E. Egger* for appellant.

(1) The stipulation whereby plaintiff released her claim so far as the telephone company was concerned did not constitute such a technical release as would discharge the defendant, a joint tortfeasor, and should have been construed as a covenant not to sue. Ridenour v. International Harvester Co., 205 S. W. 883; McDonald v. Goddard Grocery Co., 184 Mo. App. 432; Arnett v. Railroad Co., 64 Mo. App. 368; Lumber Co. v. Dallas, 165 Mo. App. 49; Dennison v. Aldridge, 114 Mo. App. 700; Laughlin v. Powder Co., 153 Mo. App. 508. (2) The stipulation should have been construed to be a covenant not to sue, and not a technical release such as would discharge a joint tortfeasor. The stipulation contained an express reservation of the right to sue the other joint tortfeasor, the defendant herein. In the case of such reservation, notwithstanding the fact that the instrument uses the word "release" the

instrument is not a release, but is a convenant not to sue the person released. Gilbert v. Finch, 173 N. Y. 455; Feighley v. Milling Co., 100 Kan. 430; Eden v. Fletcher, 79 Kan. 139; Nickerson v. Surplee, 174 N. Y. 139; Berry v. Pullman Co., 249 Fed. 816; Kropidlowski v. Pfister & Vogel Leather Co., 149 Wis. 421; Atchison, T. & S. Ry. Co. v. Classin, 134 S. W. 358; J. Rosenbaum Grain Co. v. Mitchell, 142 S. W. 121; El Paso & S. W. Ry. Co. v. Darr, 93 S. W. 169; Bloss v. Plymale, 3 W. Va. 393; Matthews v. Chicopee Mfg. Co., 3 Rob. (N. Y.) 711; Carey v. Bilby, 129 Fed. 203; 34 Cyc. 1085-1087. (3) It is quite apparent that it was the intention of the parties that the said stipulation should constitute a covenant not to sue and not a release. The instrument was entitled "covenant not to sue." In the body of the instrument is found language to the effect that the plaintiff elected to take under a certain benefit insurance plan in lieu of prosecuting her action for damages against the telephone company and further the instrument contains an express reservation of the right to sue this defendant. This certainly is sufficient to establish the intention of the parties not to sue and the instrument as not a release.

*Jourdan, Rassieur & Pierce* for respondent.

The writing, though called a "covenant not to sue," was a release of a joint tortfeasor, and therefore the release of this defendant. Dulaney v. Buffum, 173 Mo. 1; Hubbard v. Railroad, 173 Mo. 249; Chicago Herald Co. v. Bryan, 195 Mo. 587; McBride v. Scott, 132 Mich. 176.

WILLIAMS, P. J.—Plaintiff sues for damages in the sum of $10,000 for the death of her husband, Theodore C. Clark, which was alleged to have been caused by the negligence of the plaintiff on the 7th day of November, 1914.

At the close of plaintiff's evidence at the trial in the Circuit Court of the City of St. Louis, plaintiff took an involuntary nonsuit, with leave to move to set

same aside. The court overruled the motion to set aside the nonsuit and plaintiff duly perfected an appeal to this court. The facts are sufficiently summarized in the following quotations which we take from the respective statements.

From appellant's statement we quote as follows: "Deceased was in the employ of the Southwestern Telegraph and Telephone Company (hereinafter called the Telephone Company) as 'trouble man,' his duties consisting of locating and remedying wire trouble on the lines of his employer. On this date the defendant, Union Electric Light & Power Company (hereinafter called the Light Company), the Telephone Company and the City of St. Louis were maintaining their respective wires upon poles belonging to the Telephone Company, there being a joint user of said poles on what was known as the Manchester Line, of the Telephone Company. The Light Company maintained wires upon two cross-arms above the cross-arms and wires of the Light Company. There was a lead cable running from the ground to a cable box in the midst of the wires, which cable ran alongside of and perpendicular with the pole.

"On the date mentioned deceased was ordered by the trouble tester of the Telephone Company to go out on the Manchester Line and locate and correct what appeared to be a 'ground' on one of the wires of the Telephone Company. A test at the station with instruments used for that purpose showed that the wire was not crossed with the wires of the Light Company or with any other, but that the line was simply grounded. Deceased went out on the line and was upon the pole located at Taylor and Manchester Avenues of the Manchester Line of the Telephone Company when he was seen to fall from amongst the wires to the ground, a distance of from 30 to 36 feet. He was dead when eye-witnesses reached him. He had an electric burn in the palm of his left hand and his neck was broken. He was wearing canvas gloves at the time. It was necessary

for deceased to climb through the wires of the Light Company to get to the wires of the Telephone Company, the space beween the Light Company's wires being from 32 to 34 inches. The Light Company was maintaining at the time certain wires on both of their crossarms, which were carrying a heavy current, ranging from 2200 to 4400 volts, sufficiently heavy to be dangerous to human life, and other wires of the Light Company on that pole were neutral, carrying no current at all. The wires of the city and of the Telephone Company were all low-voltage and not carrying a heavy or dangerous current. The insulation on the high-tension wires of the defendant was off the wires near the pole and there were marks on the bare space of one of them, showing that a foreign body had come in contact with it at that point and that the current of electricity had been diverted from the wire into the foreign body. This mark was not upon the wire a short time before, but was there a short time after Clark was killed.''

One of plaintiff's witnesses testified as follows: That the Telephone Company had a rule whereby the men were supposed to wear rubber gloves where they were handling wires which are in contact with or in close proximity with high-tension wires, but that it was not the custom of the Telephone employees to observe that rule universally, but that if they were working on high-tension wires they would observe the rule. In working with the telephone wires they would not generally use rubber gloves; that when a wire gets crossed with an electric light wire it has the same voltage as the electric light wire, and then the precaution is taken to protect the person from shock.

The following quotations are taken from respondent's statement:

''At that time the Telephone Company had provided, among other benefits, a death benefit plan for compensation to the widow or dependents of employees killed while in the service of the company. The original fund for the creation of this plan was furnished by the

Telephone Company and it obligated itself to make up any deficiency in the fund at the end of the year, providing that such deficiency did not exceed more than a certain percentage of the total wages paid to its ememployees during the previous year. The employees contributed no money, and made no payments to this fund, nor did they pay any premiums or assessments. One of the provisions of the plan was, that in case of accident resulting in the death of an employee, which entitled his beneficiary or beneficiaries to benefits under the regulations, he or they might elect to accept such benefits, or to prosecute such claims at law as he or they might have against the company, but that if an election was made to accept the benefits, such election was required to be in writing; and it was further provided that the company be released from all claims and demands which the beneficiaries might have against the Telephone Company, otherwise than under the regulations, on account of such accident. Under the plan, these benefits were to be paid irrespective of the question of liability, but an election had to be made.

"A demand was made on the employer for damages, and it appears that the Telephone Company denied liability, and thereafter Mrs. Clark, the plaintiff, received from the Telephone Company the sum of $2760, and executed an instrument in writing, which is as follows:

" 'Covenant Not to Sue.

" 'Whereas, On or about the 7th day of November, 1914, Theodore C. Clark, a married man of the City of Webster, St. Louis County, Missouri, was in the employ of the Southwestern Telegraph & Telephone Company, as a repairman, and was working at or near the intersection of Taylor and Manchester Avenues, in the City of St. Louis, on a pole owned by the said company on said date; and,

" 'Whereas, On said 7th day of November, 1914, while the said Theodore C. Clark was working on said pole at said location, he came in contact with a live

wire owned by the Union Electric Light & Power Company and sustained injuries which caused his death on the same date; and,

" 'Whereas, I claim that my husband, the said Theodore C. Clark, received the injuries aforesaid, and from which he died as aforesaid, under circumstances which I claim renders both the Southwestern Telegraph & Telephone Company and the Union Electric Light & Power Company liable in damages, although such liability is expressly denied by said Telephone Company in so far as it is concerned, and I, being desirous to compromise and settle the matter in so far as it relates to the said Southwestern Telegraph & Telephone Company, do hereby and have elected to accept the provisions of the plan for Employees' Pension, Disability and Death Benefits of the Southwestern Telegraph & Telephone Company in lieu of any and all actions for damages against the said Southwestern Telegraph & Telephone Company, by reason and on account of the death of the said Theodore C. Clark, my husband.

" 'Now, Therefore, In consideration of the sum of $2670, to me paid by the Southwestern Telegraph & Telephone Company, the receipt whereof is hereby acknowledged, I do hereby compromise said claim, and do hereby release and forever discharge the said Southwestern Telegraph & Telephone Company only from any and all liabilities for all claims for and on account of the death of my husband, the said Theodore C. Clark, and do also release and discharge the said Southwestern Telegraph & Telephone Company only from all suits, actions or causes of action, which I have or might have against the said Southwestern Telegraph & Telephone Company, for and on account of the death of my said husband, as aforesaid.

" ' I hereby expressly refuse and decline to release the said Union Electric Light & Power Company from any claims for damages which I may have or might have against it, and do not intend to hereby waive any claims

for damages against the said Union Electric Light & Power Company for and on account of the death of my said husband, caused as aforesaid. I expressly reserve the right to enforce any and all claims that I may or might have against said Union Electric Light & Power Company.

" 'In Witness Whereof, I have hereunto set my hand in the City of St. Louis, State of Missouri, this 2nd day of November, 1914.

" 'Celia Weisling Clark,

" 'Witnesses:

" 'George C. Egger.

" 'E. H. Painter.'

"Mr. George C. Egger, who appears as one of the witnesses to this instrument, was the attorney for Mrs. Clark at the time, and according to her testimony Mr. Egger had made claim against the Telephone Company and against the Union Electric Light & Power Company for damages, as such attorney, and that was prior to the settlement that was made with the Telephone Company."

It is contended that the court erred in holding that the instrument of November 7, 1914, executed by appel-

Release of Tortfeasor.

lant to the Southwestern Telegraph & Telephone Company, was a release and was not merely a convenant not to sue said Telephone Company.

The above mentioned instrument was executed prior to the Act of March 23, 1915, Laws 1915, p. 269, which changed the common law rule concerning the legal effect of the release of one joint tortfeasor.

The instrument is therefore to be construed in the light of the common law as it existed in this State prior to the passage of the above statute. Under the common law the release of one joint tortfeasor operated to release all joint tortfeasors. [Dulaney v. Buffum, 173 Mo. l. c. 14; Hubbard v. Railroad, 173 Mo. l. c. 255; Chicago Herald Co. v. Bryan, 195 Mo. l. c. 587.]

If the last paragraph thereof were omitted from the instrument involved in this case, no difficulty would be encountered in determining the case, because the remaining portion of said instrument is a clear and unequivocal settlement in full with, and a release of, one joint tortfeasor from "any and all liabilities" by reason of the injuries suffered, and under all the authorities would operate to release the respondent, the other joint tortfeasor.

But appellant contends that by reason of the last paragraph thereof, whereby appellant attempts to reserve the right to proceed against respondent, the instrument should be construed merely as a covenant not to sue the Telephone Company and that therefore the instrument should not operate to release respondent.

There appears to be much conflict of authority upon the question and the modern tendency of the courts appears to be along the line of construing an instrument upon this subject to be a convenant not to sue wherever the language of the instrument will permit. A full list of the authorities cited by respective counsel will be found in the Reporter's notes to this opinion, and it is unnecessary to copy the citations herein. By a reading of the decisions on the subject it will be found difficult to formulate any definite and fixed rule of construction. Each case no doubt is more or less influnced by the language of the instrument held in review. A vast dissimilarity exists in the wording of the respective instruments.

We have carefully read and reread the instrument now under review and are unable to hold that it was ever intended to be merely a convenant not to sue without doing violence to the clear and unambiguous language found in said instrument.

It may have been the intention of the appellant to avoid the legal effect of a release of one joint tortfeasor, but the proper way to have avoided such a result would have been to have refrained from releasing one joint tortfeasor. The release of one joint tortfeasor stands

out clear in the instrument, and we know of no rule of construction that will justify us in destroying the release thus clearly made. It should not be forgotton that this is not a suit to reform the instrument. The instrument is in this case, to be construed as written.

This court passed upon the legal principle here involved in the case of Dulaney v. Buffum, supra, l. c. 15, wherein the court said: "When the plaintiffs acknowledge full satisfaction of all the injuries complained of in the petition, any effort to reserve a cause of action against those jointly liable, will not prevent the operation of the bar as to those not included in the release."

The above case has not been overruled and we think it announces the rule applicable at the time this instrument was executed, which was, as above mentioned, before the Act of 1915.

For the reasons given in the case of Dulaney v. Buffum, supra, we hold that the judgment of the circuit court was proper and should be affirmed.

It is so ordered. All concur.