Lelia Roper v. Florida Public Utilities Company.

179 So. 904.
Opinion Filed March 8, 1938.

*Waller & Pepper, Marion B. Knight, B. A. Meginniss* and *Ben C. Willis,* for Plaintiff in Error;

*James H. Finch,* for Defendant in Error.

TERRELL, J.—Neal Lumber and Manufacturing Company owns and operates a large sawmill, including planer mills, dry kilns, warehouses, lumber yards, commissary, office buildings, and quarters for employees, situated on the west bank of the Apalachicola River about two miles from Blountstown.

Florida Public Utilities Company is a generator and distributor of electric current and owns a transmission line for this purpose extending from Blountstown along the river to Bristol. In December, 1933, Neal Lumber and Manufacturing Company and Florida Public Utilities Company constructed a transmission line from said main line to the mill and lumber yard of Neal Lumber and Manufacturing Company by which power and light were furnished for all purposes of the latter. A meter was placed at the end of this line on the premises of the lumber company through which the current delivered to it was meas-

ured and transmitted over wires furnished and maintained by said company.

C. J. Roper was employed by a logging contractor for Neal Lumber and Manufacturing Company and lived with his family in one of the houses in the mill quarters. Early in the evening of August 9, 1935, Roper went out in the mill quarters for some reason and while walking around in the quarters came in contact with a live wire of Neal Lumber and Manufacturing Company, which had recently fallen to the ground, and was instantly killed.

On September 26, 1935, Mrs. C. J. Roper entered into a *"Covenant-Release-Agreement,"* with Neal Lumber and Manufacturing Company for a consideration of one thousand dollars. Omitting the formal and other portions of said agreement, the pertinent part to this action is as follows:

"IT IS THEREFORE COVENANTED AND BY THIS INSTRUMENT AGREED that the parties of the first part heretofore and in consideration of the sums hereinafter set forth hereby covenant with and agree with Neal Lumber and Manufacturing Company is hereby forever released and exonerated from all possible liability on their part "from damages in any amount in favor of the parties of the first part hereto and by these presents the parties of the first part or any one claiming by, under or through them or either of them do stand forever barred from instituting any suit or collecting any damages in any court of law or equity from the parties of the second part herein and this instrument shall serve as a full and complete receipt from the parties of the first part for any damages and/or judgment recovered or sustained by them against the parties on the second part. * * *

"It is further understood and agreed that this instrument in no wise releases any other person or firm or corpo-

ration, except the parties of the second part hereto from any liability for damages and/or compensation and the party of the first part hereto is by these presents granted and given the privilege and the privileges hereby reserved unto them to institute any suit or effect any compromise or settlement with any other person, firm or corporation for damages for the death of C. J. Roper, and any amounts collected from any other person, firm or corporation shall not in anywise prorate the payments herein contracted to be made."

About three months after said agreement was executed, Mrs. Roper brought this action against the Florida Public Utilities Company to recover damages for the wrongful death of her husband. After much pleading not essential to detail but predicated on the defense that Roper's death took place on the premises of Neal Lumber and Manufacturing Company beyond the meter where Florida Public Utilities Company was not responsible for keeping up the lines and that defendant was released by the agreement as here quoted, the cause went to trial resulting in a directed verdict for the defendant. Final judgment was entered and the case was brought here on writ of error.

It is admitted by both parties that the primary question presented is whether the "Covenant-Release-Agreement" here quoted should be construed as a release barring any action against the defendant on the part of Mrs. Roper or should it be construed only as a covenant not to sue the tort feasor, Neal Lumber and Manufacturing Company.

Plaintiff in error admits that if it is a release, she is barred from asserting any claim against the defendant but she contends that it should be construed as a covenant not to sue. Defendant in error contends that the instrument should be construed as a release. Both rely on L. & N. R. Co. v. Allen, 67 Fla. 257, 65 So. 8, to support their contention.

In the last cited case, this Court approved the well settled rule that a release or discharge of one or more joint tortfeasors, executed in satisfaction of the tort, is a discharge of all, on the ground that the party injured can have but one satisfaction for his injury. Each is considered as sanctioning all the acts of the others, thereby making them his own, and each is liable for the whole damage as if it had been occasioned by himself alone; hence the law considers that he who pays for the injury has paid for all, and there is nothing left for which the other tortfeasors can be liable.

The fact that the release contains a provision to like effect as the second paragraph in the agreement here quoted does not relieve it from the rule here approved. We had the identical question in 'L. & N. R. Co. v. Allen, *supra,* and while we found that there was much contrariety of opinion on the question, we held that a stipulation between the parties that the release of one will discharge the other was the law of this State.

The distinction between a release and a covenant not to sue is highly technical, the difference being one of intent and growing out of the construction placed on the terms of the instrument. If it is apparent from the face of the instrument that the intention was to discharge the liability of one of the joint tort feasors, the Courts generally hold that the indivisible joint liability is extinguished. Where this is the case, a clause by which the parties seek to reserve a right of action against the other tortfeasors is repugnant to the release and void. If on the other hand, it is clear that the consideration paid was not intended to preserve the liability of those who were not parties to it, some of the Courts have given effect to if by construing it in effect a covenant not to sue instead of a technical release. Matheson v. O'Kane, 211 Mass. 91, 97 N. E. 38.

The release agreement involved in this case is not in the same terms as that involved in L. & N. R. Co. v. Allen, *supra,* but it is no less a release. It contains every element and shows conclusively that it was intended to discharge Neal Lumber and Manufacturing Company from any liability whatever for damages or for any judgment recovered against it by the plaintiff in error. It is quite true that it in effect reserves a right of action against defendant in error but being a release that question is concluded by the last cited case.

On the theory that parol testimony could not be introduced to vary the terms of the written instrument, the trial court refused to permit the introduction of any evidence on the question of whether or not the release agreement was procured through misrepresentation, overreaching, or undue advantage taken of the plaintiff in error.

The pleadings put this question in issue and it was one to be determined by the jury on evidence submitted. There is a marked distinction between varying the terms of a written instrument and proving that it was procured by undue means. While its terms may not be varied by parol evidence, it is competent to prove that the instrument was procured in violation of law. Florida East Coast Ru. Co. v. Thompson, 93 Fla. 30, 111 So. 525; Florida Power and Light Co. v. Horn, 100 Fla. 1339, 131 So. 219; Rockwell v. Capital Traction Co. 25 App. Cases (D. C.) 98. For the error committed on this point, the judgment must be reversed for appropriate proceedings.

WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

ELLIS, J., dissenting. The judgment should be affirmed.