No. 18,348.

R. P. PRICE, ET AL. *v.* CHARLES L. BAKER.

(352 P. [2d] 90)

Decided December 7, 1959. On rehearing May 31, 1960, original opinion adhered to.

Messrs. CALKINS, RODDEN & KRAMER, for plaintiff in error.

Mr. ALDEN T. HILL, Mr. RALPH H. COYTE, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS writ of error involves the question of whether a so-called covenant not to sue, as hereinafter described, is to be construed as a release in a tort action. The parties appear here in the same order as in the trial court where the court entered a judgment of dismissal in favor of defendant Baker upon his motion for summary judgment. We shall hereafter refer to Price and Kusserow by name or as plaintiffs and to the defendants by name. It appears that one of the defendants below, Charles L. Baker & Company, is insolvent and does not appear as a party to this writ of error.

Plaintiffs brought an action for damages for fraud

and deceit against Charles L. Baker & Company, Charles L. Baker and C. M. Howell, based upon alleged false representations in connection with the sale of stock for $2500.00 each to Price and Kusserow and certain employment of the plaintiffs by Charles L. Baker & Company.

After the matter was at issue in the trial court Howell, in consideration of $1500.00, entered into an agreement with Price and Kusserow entitled "Covenant", in which they agreed not to sue Howell for either of the matters then in issue, and in which Howell expressly denied liability and any admission of liability. The covenant stated that plaintiffs further "* * * expressly reserves (sic) the right to sue and continue to sue any other person or persons against whom they may have or assert any claim for loss or damage * * *." arising out of the above mentioned transactions. Specific reference was then made to the reservation of the right to prosecute the suit against the other two defendants. The covenant then provided:

"It is further expressly understood and agreed that as against undersigned, their heirs, executors, administrators and assigns, this instrument may be pleaded as a defense in bar or abatement of any action of any kind whatsoever, brought, instituted or taken by or on behalf of the undersigned on account of said supposed claim or claims against the said C. M. HOWELL."

A stipulation to dismiss as to Howell without prejudice was then filed with the trial court; the covenant was presented to the court by the remaining defendants, who were then permitted to amend their answer and move for the summary judgment, which motion was granted.

Plaintiffs assert that there is a split in the authorities on the question involved and urge that we adopt what they describe as the "modern trend" as expressed in some jurisdictions, which is to give full effect to the intention of the parties as revealed by such document and that the tendency of some courts is to also consider

whether the injured party has been fully compensated for his loss or damages caused by the joint tort-feasors. They cite as authority *Matheson v. D'Kane* (1912) 211 Mass. 91, 97 N.E. 638; 39 L.R.A. (N.S.) 475; Ann. Cas. 1913 B, 267; *Harmon v. Givens* (1953), 88 Ga. App. 629, 77 S.E. (2d) 223; and *Gronquist v. Olson* (1954), 242 Minn. 119, 64 N.W. (2d) 159; and refer to discussions in 148 A.L.R. 1281; 1 *Harper and James, The Law of Torts,* §10.1 (1956).

For the reasons hereinafter set forth we believe the so-called modern trend to be wanting in reason and logic and we are not inclined to accept it as the rule of decision here. On the contrary we believe that the trial court was correct in its interpretation of this particular instrument and that the authorities cited by plaintiffs approving this type of instrument as a covenant not to sue are not persuasive or acceptable in Colorado.

█ This state has long followed the universal rule that the release of one joint tort-feasor is a release of all. *Morris v. Diers* (1956), 134 Colo. 39, 298 P. (2d) 957; also see *Rust v. Schlaitzer* (1933), 175 Wash. 331, 27 P. (2d) 571; 20 A.L.R. (2d) 1044. And the intention of the parties has no bearing upon the legal effect of a release. *Morris,* supra. Clearly an instrument designated a "release" and fully discharging one joint tort-feasor would release, as a matter of law, his fellow wrongdoers even if the same instrument expressly attempted to reserve the injured person's claims or right to sue others. *Morris,* supra; *Rust,* supra. The same is true of a covenant not to sue which goes beyond the agreement not to sue to the point where it has the effect of a release. *Clark v. Union Electric Light & Power Co.* (1919), 279 Mo. 69, 213 S.W. 851.

In *Roper v. Florida Public Utilities Co.* (1938), 131 Fla. 709, 179 So. 904, and in *Byrd v. Crowder* (1933), 166 Tenn. 215, 60 S.W. (2d) 171, it was held that the indivisible joint liability was extinguished by using any wording that permits the instrument to be set up as a

defense; thus any clause reserving the right to sue others, where the covenant states it is a bar or may so be used, is *a fortiori* held to be repugnant and thus void.

In *Morris* it was also pointed out that the rule widely followed is that an injured party can have only one satisfaction for his damages.

In *Haney v. Cheatham* (1941), 8 Wash. (2d) 310, 111 P. (2d) 1003, it was held following the reasoning in *Rust*, supra, that where an instrument is executed for the benefit of one joint tort-feasor, it is a "covenant not to sue" if it gives to the joint tort-feasor nothing more than a right of action against the covenantor in event of breach of such agreement by the institution of an action in return for payment made by him, but it is a "release" if it may be pleaded as a defense to defeat the action brought by covenantor.

 Another reason for the rule, as we perceive it, is that liability for a tort is not a fixed and definitive sum, and the law concludes that the consideration paid, whatever it may be, extinguishes the claim itself, for who knows better than a plaintiff at what price he truly values his loss or injuries.

 A corrollary to the reason for the rule could well be that the injured party should not be permitted to create degrees of liability as between wrongdoers. For example — in the case at bar — that one defendant may be able to discharge his liability for only a part of the claimed damage, when in law if he is liable at all he is liable for the total damage, as are the other defendants. It is true that these plaintiffs could have sued only defendant Baker in the first instance and make their total recovery, if any, from him, but this they did not do, and having made their election to sue the other defendants in the same action, are bound by the rules applicable thereto.

Covenants not to sue have a recognized status in the American system of jurisprudence though sometimes the difference between releases and such covenants is nebu-

lous indeed and very difficult to distinguish with precision. See 4 *Restatement, Torts,* §885, and 20 A.L.R. (2d) 1044. Also see *Walling v. Warren* (1874), 2 Colo. 435, wherein such instruments are implicitly recognized and we are in full accord with that decision when covenants are properly drawn so as not to extinguish the cause of action.

As we view the problem, the determinative point here is not what did the parties intend, nor what was the consideration, but what was the legal effect of the instrument entered into with Howell? This is so because no matter what the contracting parties may label a document of this type, the courts will look at its substance rather than its form. *Rust,* supra.

In the case at bar the wording quoted has the effect of a release. See *Rust,* supra, *Roper,* supra, and *Byrd,* supra, which so held upon almost identical wording. The document goes further than a covenant not to sue for the breach of which Price and Kusserow would in turn be liable for damages. The clause in question allows the instrument to "be pleaded as a defense in bar or abatement of any action of any kind whatever * * *." These words effectively extinguish the indivisible right the plaintiffs had to proceed against Howell, and in our view could be no more effective than if the words "hereby release and forever discharge said claims" had been used. See *Clark,* supra. The use of the latter words would unquestionably release the other joint tortfeasors, and the use of the language in the so-called covenant not to sue, if distinguishable at all, is without a difference.

*Prosser in "The Law of Torts,"* 2d ed., p. 244, note 24, intimates that the philosophy of *Rust,* supra, has been rejected by the Supreme Court of Washington because of the holding and comments appearing in *Richardson v. Pacific Power & Light Co.* (1941), 11 Wash. (2d) 288, 118 P. (2d) 985. In passing we note that *Prosser* erroneously gives the citation of *Richardson* as being 160 P.

(2d) 783, the latter case being in fact *Pellett v. Sonotone Corp.* (1945) 26 Cal. 2d Adv. 614, 160 P. (2d) 783, 160 A.L.R. 863, which is discussed *infra*.

In *Richardson* a telephone company lineman was electrocuted by a fallen power line. One of the issues was as to his possible contributory negligence. Another was whether a "Receipt and Release" which the widow signed and thereby acknowledged receipt from the 'phone company of full payment under its "benefit plan," had discharged it from all claims and demands and whether it was in fact a release of her tort claim for culpability against the company. It was properly held that the instrument was not such a discharge and was not intended as such. It is to be noted that in *Richardson* the court cited *Rust,* supra, with approval as well as *Haney v. Cheatham* (1941) 8 Wash. 2d 310, 111 P. (2d) 1003, both cited by Prosser as probably not to be further followed. The court in *Richardson,* at page 317, said the trial court in considering the question should " * * * look to its consideration, *its effect,* and the circumstances attending its execution." (Emphasis supplied.) It then pointed out that the trial court treated the instrument as a covenant not to sue and found there was no consideration paid the decedent's estate for its execution. The appellate court said it was not really a covenant not to sue but only *a receipt for money owed under a contract.* It also agreed with the trial court that there was no consideration received by the estate for the instrument so it wouldn't be binding no matter what it was.

*Richardson* cannot be said to repudiate *Rust* and we think that *Prosser* is in error in so surmising.

*Pellett* was a tort action for damages and among the questions determined by the California court was the distinction between a release and a covenant not to sue. The court saying:

"The rule in this state, applied in many cases, is that a release of one joint tort feasor is a release of all (citing cases) but that a mere covenant not to sue one joint tort

feasor does not release the others. (Citing cases.) There is authority in other jurisdictions for a contrary holding, where the one making the release reserves his rights against the others, if he has not received full satisfaction. See, Rest., Torts §885. This view is illustrated by McKenna v. Austin, 77 U.S. App. D.C. 228, 134 F. 2d 659, 148 A.L.R. 1253, which proceeds on the theory that it is a question of fact and intent whether a settlement is made in full satisfaction or merely as the best obtainable compromise; and that a partial satisfaction taken in compromise does not discharge the other wrongdoers. *It should be noted, however, that the McKenna case also recognizes the right to contribution among joint tort feasors, which is not permitted in this state.* (Emphasis supplied.)

As pointed out in the McKenna case, the distinction between a release and a covenant not to sue is entirely artificial. As between the parties to the agreement, the final result is the same in both cases, namely, that there is no further recovery from the defendant who makes the settlement, and the difference in the effect as to third parties is based mainly, if not entirely, on the fact that in one case there is an immediate release, whereas in the other there is merely an agreement not to prosecute a suit. The rule regarding a covenant not to sue was apparently adopted as an exception to the strict release rule because the courts desired to modify the latter rule by indirection.

" * * *

*A release* has been defined as the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced (Black's Law Dict.; Ballentine's Law Dict.) and *its effect is to extinguish the cause of action; hence it may be pleaded as a defense to the action. A covenant not to sue, on the other hand, is not a present abandonment or relinquishment of the right or claim, but merely an agreement not to enforce an existing cause of action.*

It does not have the effect of extinguishing the cause of action; and while, in the case of a sole tort feasor, the covenant may be pleaded as a bar to the action in order to avoid circuity of action, *a covenant not to sue one of several joint tort feasors may not be so pleaded by the covenantee, who must seek his remedy in an action for breach of the covenant.* (Citing cases.)." (Emphasis supplied.)

160 A.L.R. at 871 says about *Pellett*:

"The court observed that the plaintiff did not expressly or by implication abandon or relinquish its claim against the covenantee or agree to accept the payments by the covenantee in satisfaction of his claims *and that the agreement could not be pleaded as a defense by the covenantee.* The court held that the agreement was not such an instrument as would operate to release other joint tort-feasors." (Emphasis supplied.)

This same annotation at page 872 cites *Gillette Motor Transport Co. v. Whitfield* (1945) (Tex. Civ. App.) 186 S.W. (2d) 90, as holding that there is no bar when the instrument is drawn so as not to release the other defendants but is merely an agreement not to enforce any judgment secured. Another case, *Ferrell v. Kingshighway Bridge Co.* (1938) (Mo. App.) 117 S.W. (2d) 693, was cited to show that where *by statute* a right of contribution exists a different situation prevails.

The court in *Pellett* held that the instrument in question was in the nature of a covenant not to sue and allowed recovery by Pellett against Sonotone.

Though many jurisdictions are now adopting the rule urged by plaintiffs we point out that in at least two of them statutes exist which allow the right of contribution among joint tort-feasors. See *Judson v. Peoples Bank* (1954) 17 N.J. 67, 110 A. (2d) 24; *Breen v. Peck* (1958) 28 N.J. 351, 146 A. (2d) 665; *Louisville Gas & Electric Co. v. Beaucond* (1920) 188 Ky. 725, 224 S.W. 179 (wording of release not given; contribution not decided); in another jurisdiction the right of contribution exists by right

of decision, see *McKenna v. Austin* (1943) 134 F. (2d) 659. *McKenna* with one well reasoned dissent goes into the theory and background of this entire problem and concludes that the rule here approved should not be further followed. Mr. Justice Rutledge speaking for the majority ably sets forth the grounds now urged upon us. We reject his reasoning and say the lone dissenter points out cogent reasons why it should not be the law.

Among the authorities cited by these plaintiffs is *Gronquist,* supra. We point out that though the court there said the intention of the parties is a question of fact and governs, that the wording in question was not such as would destroy the cause of action as in the case before us. Distinctions of various kinds can be found in decisions in a few of the other jurisdictions which have adopted the intent rule. For example see *Gilbert v. Finch* (1903) 173 N.Y. 455, 66 N.E. 133 (insurance company tried to release some directors of liability for malfeasance; held it could not be done; court also pointed out that they were not joint tort-feasors); *Steenhuis v. Holland* (1929) 217 Ala. 105, 115 So. (2d) 2 (action under Homicide Act (Code Sec. 5696) to construe a full release which court held was not a bar to a suit by personal representative).

It is also true that *Roper,* supra, involved a release and so is distinguishable from the instant case. It, however, does stand for the proposition that the right itself is extinguished when the wrong words are used in the instrument and that words of reservation of right used in a release are void.

Properly drafted covenants not to sue, whether drafted before suit, or during suit and labeled as a mere "covenant," will permit compromise in accordance with established principles. Our holding recognizes that releases came first in the common law and that the covenant not to sue is a mere appendage or tail now trying to wag the dog. Intent or amount received can have no bearing on

the problem once the right itself is destroyed as happened here.

The judgment is affirmed.

MR. JUSTICE MOORE concurs in the result in view of the prior holding of this court in *Morris v. Diers,* supra.

MR. JUSTICE DAY, MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE dissent.

MR. JUSTICE DOYLE dissenting:

I respectfully disagree with the conclusion of the majority that the instrument here in question operates as a release and extinguishment of the claim of the plaintiff against both of the defendants.

My reasons are summarized as follows:

*First*: The opinion violates the fundamental canon of contract construction that the court must give effect to the manifest intent of the parties. The instrument here held by the majority to be a release is in form and substance an unambiguous covenant not to sue, the intent to reserve the right of the plaintiff against the remaining defendant not a party to the contract being clear.

*Second:* The ruling of the majority rests on artificial reasoning. Its basis is that the covenant not to sue does not operate to extinguish the right, but merely removes the remedy so that when the covenant may be pleaded in bar of a suit against its terms it becomes a release contrary to its express terms. This is 19th century hair splitting. Whether the covenant destroys the right or the remedy is of little consequence. The important thing is that the paying defendant who holds an effective covenant has satisfied his liability and is out of the case. Why belabor the question whether he can plead the covenant as a bar or must sue independently if the payee violates the contract and sues him notwithstanding the payment. What court would refuse to recognize a covenant evidencing payment? Is it possible to con-

ceive that a plaintiff who has been paid would be allowed to recover again contrary to a covenant and that the settling defendant would be relegated to a doubtful contract remedy merely to satisfy ancient formalism? I think not.

*Third*: It is artificial in the extreme in that it places all the emphasis on legal draftsmanship even to the extent of taking away important substantive rights. Inadvertent insertion by an unsophisticated lawyer of certain magic words will transform a covenant into a release.

*Fourth*: The majority proceeds on the assumption that a tort action is indivisible. This is contrary to the fundamental and generally recognized principle that the liabilities of several defendants are several in character so that any one of them can be held for the entire consequence of the wrong. The "indivisible" concept is therefore without a basis aside from the historical one.

*Fifth*: The attempted distinction between the covenant not to sue and the release is itself questionable. It seems to me that the covenant is a device which has evolved because of the reluctance of the court to overthrow altogether the release rule. Would it not be better to forthrightly recognize partial releases as such where the parties express this intention by so declaring and by reserving remaining rights?

*Sixth*: The consequence of the majority opinion is to render the "covenant not to sue" and the "reservation of right" as impractical settlement methods. They will no longer be used because if they can't be pleaded they become ineffectual and no sensible defendant will accept one with all of its attendant risks. Thus, although the majority purports to approve the covenant, in reality it repudiates it and adheres to the common law rule.

The numerous cases holding contrary to the majority ruling illustrate more fully the absence of any basis, logical, equitable or historical, in support of the ruling. A study of these decisions establishes that the majority

decision represents a diminishing minority viewpoint. The cases which hold that there is no release can be classified into three different groups which include:

a. Those which hold that the discharge rule should be abolished.

b. Those which construe a release with a reservation of right as a covenant not to sue; and

c. Those cases which look to the intention of the parties and to whether the plaintiff has received satisfaction.

1. *The view that the release rule should be repudiated. McKenna v. Austin* (Ct. of App., D.C., 1943), 134 F. (2d) 659 is the leading authority which holds that the release rule is ill-founded and should be repudiated. The artificiality of the rule is cogently discussed in the opinion of the late Justice Rutledge as follows:

"In determining the character as well as the effect of such an agreement, we are unwilling to concede so much potency to mere verbalism. The matter does not require the formalism of conveyancing. Whether words of 'release' or of 'covenant' are used, the effect should be the same. Wide acceptance of the distinction notwithstanding its want of substance, and the decisions that in applying its intention should control, point the way to reexamination of the rule and its foundations.

"The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss. Compromise is stifled, first, by inviting all to wait for the others to settle and, second, because claimants cannot accept less than full indemnity from one when doing that discharges all. Many, now knowing this, accept less only to find later they have walked into a trap. The rule short-changes the claimant or overcharges the person who settles, as the recurring volume and patter of litigation show. Finally, it is anomalous in legal theory, giving

tortfeasors an advantage wholly inconsistent with the nature of their liability."

The historical foundations of the rule are also there examined with respect to the concept that a tort obligation is so indivisible as to prevent separate settlement. Justice Rutledge points out that this is a vestige of an old principle which was applied in the law of property and contracts where indivisibility was actually present. He states that there was never any basis for treating tort liability in this manner — that tort liability has in modern times been regarded as several for the purpose of suit and for the purpose of satisfaction.

Justice Rutledge also shows that the rule has no practical value — that any protection against excess recovery which it might have once provided can be obtained merely by trying the question of full satisfaction in court. Unreleased defendants will be credited with the amount paid by the released defendant and if this appears to fully compensate the plaintiff, he will not recover anything additional.

In pointing out that there is no basis for the presumption that a settlement is a full satisfaction, the Court said:

" * * * Ordinarily the claimant will not secure complete indemnity from one or less than all, unless the others are judgment proof. Such a settlement usually would not be advantageous to the settling wrongdoer. The presumption of fact therefore generally would be against full satisfaction and discharge. It would seem conclusive when rights against those not released are reserved explicitly or intention otherwise appears to keep these claims alive. Whether the settlement is made and accepted as obtainable compromise for the settler's liability is the crucial issue, and ordinarily one of fact. If however the agreement's terms leave no room for doubt, the decision should be made as a matter of law. * * * "

In the *McKenna* case the agreement contained a reser-

vation of right, together with a release of the settling part and also provided that "these presents may be pleaded as a defense to any action or other proceeding which may be brought, instituted or taken by the undersigned."

The view expressed in the *McKenna* case that a joint tort feasor is not released by release of his fellow alleged wrongdoer even though the release is a surrender of rights against the settling defendant and even though the document does not contain a provision reserving rights is followed in several recent authoritative decisions. Though there is reservation of right in at least some of these cases, the presence or absence of such a reservation is held unimportant and the courts refuse to participate in the covenant not to sue fiction. *Breen v. Peck,* 28 N.J. 351, 146 A. (2d) 665; *Judson v. People's Bank and Trust Co.,* 17 N.J. 67, 110 A. (2d) 24; *Gottscho v. American Marking Corp.,* 18 N.J. 467, 144 A. (2d) 438; *Steenhuis v. Holland,* 217 Ala. 105, 115 So. 2; *Louisville Gas & Electric v. Beaucond,* 188 Ky. 725, 224 S.W. 179; *Fitzgerald v. Union Stockyards,* 89 Neb. 393, 131 N.W. 612. These cases hold that the settlement with the one defendant is not a bar to a proceeding against other defendants but "it is only pro tanto a bar to an action against the wrong doers." *Ellis v. Esson,* 50 Wis. 138, 6 N.W. 518.

In the *Judson* case, supra, the New Jersey Court held that a dismissal against one defendant with a reservation of right to continue against the remaining defendants did not result in release of the others — that this was neither a release nor a covenant. The terms of the dismissal were examined with a view to ascertaining the parties' intent and the conclusion was reached that this dismissal did not constitute a satisfaction. Speaking through Justice Brennan the Court noted that the release rule is "rooted in the sound and just principle that there may be but one satisfaction for a tortious wrong, * * *."

In the *Breen* case the New Jersey Court went even

further in that there the document was an outright release but the court refused to construe it as a discharge of the remaining tort feasors since it failed to express this intent. This opinion is valuable because it shows that the viewpoint adopted by the majority in this case was repudiated by the English courts in 1892. *Duck v. Mayeu* (1892), 2 Q.B. 511 (C.A.), recognizing a reservation of right as a covenant. The case also contains a summary of authors' viewpoints and this part of the opinion is quoted as follows:

"* * * In the United States the English release rule has been under vigorous attack for many years. In 1923 Dean Wigmore referred to it as a surviving relic which was based on false logic and, although accepted by many courts, was fortunately being repudiated in some states by judicial decisions and in others by legislative action. See Wigmore, 'Release to One Joint-Tortfeasor,' 17 Ill. L. Rev. 563 (1923). In his 1930 edition of Cooley on Torts, Professor Throckmorton referred to the growing tendency on the part of American courts to replace it with the 'sound and reasonable' rule that unless the parties so intended a release should not absolve strangers thereto. See Throckmorton's Cooley on Torts, §80 (1930). In 1941 Dean Prosser referred to the rule as 'at best an antiquated survival of an arbitrary common law procedural concept' and suggested that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer 'unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it.' See Prosser, Torts, 1109, 1110 (1941); Prosser, Torts, 244-245 (2d ed. 1955). Cf. Prosser, 'Joint Torts and Several Liability,' 25 Calif. L. Rev. 413, 424 (1937). In 1951 Professor Corbin's work on contracts included devastating comments on the English release rule in the field of torts as well as contracts (4 Corbin, Contracts, §§931-935 (1951)), and in 1956 Professors Harper and James joined in advocating the modern view that the legal effect of a release on

strangers thereto should justly be determined by the intent of the parties to the release and the extent of the compensation paid to the releasor rather than upon outmoded concepts of ancient times. See 1 Harper & James, Torts, 711-712 (1956). See also Notes, 22 Minn. L. Rev. 692 (1938; 18 U. Cin. L. Rev. 378 (1949); 33 Notre Dame Law. 291 (1958)."

2. *The view which construes and applies as a covenant an instrument which contains a reservation of right.*

The English viewpoint that the instrument of release will be construed as a covenant not to sue where it contains a reservation of right against the remaining defendant or defendants has been followed with substantial consistency in the United States since the turn of the century. Thus in *Carey v. Bilby* (8 cir. 1904), 129 F. 203, the Court per Thayer, J., said:

" \* \* \* Other courts hold, however, that such an instrument should be given effect according to the obvious intent of the person executing it, and that it should not be treated as a technical release operating to destroy his cause of action as against all of the joint tort feasors, but rather as a covenant not to sue the party in whose favor the instrument runs. Gilbert v. Finch, 173 N.Y. 455, 66 N.E. 133, 61 L.R.A. 807; Matthews v. Chicopee Mfg. Co., 3 Rob. 711, 712; Ellis v. Esson, 50 Wis. 138 6 N.W. 518; 36 Am. Rep. 830; Hood v. Hayward, 124 N.Y. 1, 16, 26 N.E. 331; Sloan v. Herrick, 49 Vt. 327; McCrillis v. Hawes, 38 Me. 566; Miller v. Beck, 108 Iowa 575, 79 N.W. 344, 345; Price v. Barker, 4 El. & Bl. 760, 776, 777.

"We are of opinion that the doctrine enunciated in the cases last cited is supported by the greater weight of authority, and is founded upon the better reasons. It has the merit of giving effect to the intention of the party who executes such an instrument, which should always be done when the intention is manifest and it can be given effect without violating any rule of law, morals, or public policy. Besides, we are not aware of any sufficient reason which should preclude a person who has

sustained an injury through the wrongful act of several persons from agreeing with one of the wrongdoers, who desires to avoid litigation, to accept such sum by way of partial compensation for the injury as he may be willing to pay, and to discharge him from further liability without releasing his cause of action as against the other wrongdoers. The law favors compromises generally, and it is not perceived that an arrangement of the kind last mentioned should be regarded with disfavor. The release which was read in evidence in the case at bar plainly shows that the sum paid by Hysham was not accepted by the plaintiffs as full compensation for the injury which they had sustained; that it was not in fact full compensation for the injury; and that they had no intention of releasing their cause of action as against Carey. Why, then, should it be given an effect contrary to the intent of the one who executed it? We perceive no adequate reason for giving it such effect, and accordingly agree with the lower court that it did not release Carey."

An even earlier American case interpreting a release with a reservation of right as a covenant not to sue is *Gilbert v. Finch*, (1903), 173 N.Y. 455, 66 N.E. 133, where it is pointed out that such a release had been considered a covenant by an American court of equity as early as 1822 in *Kirby v. Taylor* (opinion by Chancellor Kent), 6 Johns. Ch. R. (N.Y.) 251. In the *Gilbert* case it was said:

" * * * It thus appears that the decisions of this court are in accord with the English rule, and in harmony with our statute in reference to joint debtors. Code Civ. Proc. §§1942, 1944. They give force and effect to the intention of the parties to the instrument, which, we think, is more just, and the wiser and safer rule. Where the release contains no reservation, it operates to discharge all the joint tort feasors; but, where the instrument expressly reserves the right to pursue the others, it is not technically a release, but a covenant not to sue, and they are

not discharged. It follows that the release, so called, did not operate to discharge the defendants."

The cases adhering to this rule that the reservation of right shows the intention of the parties not to release the non-settling defendant, and that it should be considered a covenant not to sue when it has such a reservation are legion. They are collected in the notes 50 A.L.R. 1099, 66 A.L.R. 214, 104 A.L.R. 862, 124 A.L.R. 1316. See also *Natrona Power Co. v. Clark* (1924), 31 Wyo. 284, 225 Pac. 586, a fully reasoned opinion, and the numerous authorities there cited. And see *Black v. Martin* (1930), 88 Mont. 256, 292 Pac. 577, construing an instrument which was an outright release but which contained a reservation of right and holding: " * * * Such an instrument is to be considered according to its intention. * * *'"

An early Massachusetts decision, *Matheson v. O'Kane* (1912), 211 Mass. 91, 97 N.E. 638, 39 L.R.A. (N.S.) 475, is exactly like the instant case on its facts, in that the released defendants were authorized to plead the instrument in bar to any action filed by the plaintiffs. The Court held, however, that this did not constitute a release of other defendants and said:

" * *´ * But where it is evident that the consideration paid to the plaintiff was not intended to be full compensation for his injuries, and the agreement signed by him although in form a release was clearly intended to preserve the liability of those who were not parties to it, many of the courts have sought to give effect to a covenant not to sue and not a technical release. As stated by A. L. Smith, L.J., in Duck v. Mayeu [1892] 2 Q.B. 511: 'A rule of construction for such a document was laid down by the Court of Queen's Bench in Price v. Barker, 4 El. & Bl. 760, at page 777, where it was held that, in determining whether the document be a release or a covenant not to sue, the intention of the parties was to be carried out, and, if it were clear that the right against a joint debtor was intended to be preserved, inasmuch as such right would not be preserved if the document were

held to be a release, the proper construction where this was sought to be done, was that it was a covenant not to sue, and not a release.' And, see, Edens v. Fletcher, 79 Kan. 139, 98 Pac. 784, 19 L.R.A. (N.S.) 618; McAllester v. Sprague, 34 Me. 296; Gilbert v. Finch, 173 N.Y. 455; 66 N.E. 133, 61 L.R.A. 807, 93 Am. St. Rep. 623; Bloss v. Plymale, 3 W. Va. 393, 100 Am. Dec. 753; Ellis v. Esson, 50 Wis. 138, 6 N.W. 518; 36 Am. Rep. 830, Carey v. Bilby, 129 Fed. 203, 63 C.C.A. 361. The lack of harmony in the cases is partly due also to distinctions sometimes drawn between the effect of a release under seal and one not under seal; and between settlements made where the damages are certain or subject to computation, and where they are uncertain and a mere matter of opinion. But we are not concerned with this controversy in the present case, as the writings given by this plaintiff were admittedly nothing more than agreements not to sue.

"The discontinuance of the action against the other defendants in itself does not affect the liability of the defendant O'Kane. The plaintiff at her election might have sued one or two or all of the tort-feasors. The discontinuance simply placed Horgan and Townsend in the same position they occupied before the litigation began. Sloan v. Herrick, 49 Vt. 328; Bloss v. Plymale, 3 W. Va. 393, 100 Am. Dec. 753, 58 L.R.A. 303, and cases collected in note. * * *"

4 *Restatement, Torts,* §885 (1939) is modeled after the last cited cases. It adopts the less extreme rule which provides that a release will be construed as a covenant not to sue where the right to proceed against the remaining tort feasors is expressly reserved. It also emphasizes the importance of the expressed intent of the contracting parties. It provides:

"(1) A valid release of one tort-feasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the

others, and if the release is embodied in a document, unless such agreement appears in the document.

"(2) A covenant not to sue one tort-feasor for a harm does not discharge any other liable for the harm."

The comment emphasizes the desirability of giving effect to the intention of the parties:

" * * * Furthermore, the tendency is to give effect to the intent of the parties to a transaction rather than to regard as controlling the formalities with which the transaction is executed. The law has now developed so that it is possible to carry out the intent of the parties as expressed in the document by which the release is given.

\* \* \*

"If however, there is language in the release which manifests that the releasor intended to preserve his rights against the others, effect is given to this manifestation. * * *"

3. *The viewpoint that the issue of intent of the parties and sufficiency of the satisfaction should govern.*

The opinion of the Minnesota Court in *Gronquist v. Olson*, 242 Minn. 119, 64 N.W. (2d) 159 is somewhat similar to the expressions in the *McKenna* case in that it abandons the attempted distinction between the covenant not to sue and the release and thus eliminates what everyone recognizes as a legal fiction. At the same time it does not have the effect of undermining the release itself, and this is a criticism which can be leveled against the *McKenna* case. The *Gronquist* rule requires a manifestation in the document of intent not to release remaining defendants. It places emphasis on the intention of the parties as shown by the release and would not allow a party to impeach in court an unequivocal release. In this fully reasoned opinion by Mr. Justice Nelson the standards of intent and full compensation are explained as follows:

" * * * We believe that the factors determinative of whether a release of one of several joint tortfeasors will

operate to release the remaining wrongdoers should be and are: (1) The intention of the parties to the release instrument, and (2) whether or not the injured party has in fact received full compensation for his injury. If we apply that rule, then, where one joint tortfeasor is released, *regardless of what form that release may take,* as long as it does not constitute an accord and satisfaction or an unqualified or absolute release, and there is no manifestation of any intention to the contrary in the agreement, the injured party should not be denied his right to pursue the remaining wrongdoers until he has received full satisfaction. See City of Covington v. Westbay, 156 Ky. 839, 162 S.W. 91. Where the intention of the parties is clear from the contents of the instrument, it ought not to be necessary to resort to legal fiction in order to reach just and proper results. See, 22 Minn. L. Rev. 692. Since each tortfeasor is liable for the entire damage, if one sees fit to secure acquittance for himself by compromise with the injured person, he does no wrong to the other tortfeasor jointly liable with him. How can the appellant complain if the other party jointly liable has paid part of the damages? He has not been prejudiced by the settlement but on the contrary has been benefitted, for he is entitled to have the amount of the judgment reduced by the amount paid by his co-tortfeasor. Furthermore, it must be noted that in most jurisdictions there is no right of contribution between joint wrongdoers, and although Minnesota does allow contribution to a joint tortfeasor whose liability is based only on simple negligence, there is no right of contribution in this state between tortfeasors such as in the instant case where the tort was proved intentional and the tortfeasors were held liable for a known and meditated wrong. See Warren v. Westrup, 44 Minn. 237, 46 N.W. 347.

"We are not aware of any compelling reason to justify precluding a person who has sustained an injury through the wrongful act of several persons from agreeing with

one of the wrongdoers who desires to avoid litigation to accept a sum by way of partial compensation and to discharge that wrongdoer from further liability without releasing his right of action as against the other wrongdoers for the remainder of the judgment. Compromises are favored generally in the law, and it would be inconsistent to regard such arrangements with disfavor * * *"

The above analysis seems highly sensible and realistic and also satisfies the criticisms of the release .rule. It recognizes the rule only in a case where the release fails to set forth an intention to reserve rights against other defendants. Use of the standards would serve to prevent multiple or unjust recovery and at the same time would prevent loss of a part of the plaintiff's right by reason of inadvertent drafting. See the excellent comment on this case in 1 *Harper and James, Torts,* 1956, pp. 711-714.

Although the instant case could be solved merely by adoption of the Restatement or English viewpoint which construes as a covenant a release with a reservation of right, I prefer the forthright approach of the *Gronquist* case.

4. *The rule that a covenant which can be pleaded in bar operates as a complete release.*

I have commented sufficiently (perhaps too much) on the unjust and illogical aspects of the majority opinion. It remains to point out that it has little support in the cases and undoubtedly will have less support as time goes on. Tennessee, Washington and Florida seem to be the only jurisdictions which adhere to this. See *Rust v. Schlaitzer* (1933), 175 Wash. 331, 27 P. (2d) 571, 20 A.L.R. (2d) 1044; *Clark v. Union Electric Light & Power Co.* (1919), 279 Mo. 69, 213 S.W. 851; *Roper v. Florida Public Utilities Co.,* 131 Fla. 709, 179 So. 904; *Byrd v. Crowder,* 166 Tenn. 215, 60 S.W. (2d) 171.

In the *Clark* and *Roper* cases the instrument was in the form of a release and not in the language of a covenant not to sue. A further distinguishing feature in the *Clark* case is a finding by the Court that the plaintiff

there acknowledged full satisfaction. So also in the *Roper* case there were strong indications that the plaintiff had been fully compensated. The *Rust* case and the other Washington decision which is relied on by the majority appear to hold like the majority that a provision which allows the instrument to be pleaded in bar of a suit by the plaintiff against the settling defendant transforms a covenant into a release and extinguishment.

With the exception of *Byrd v. Crowder,* most of the cases relied on by the majority are not as extreme as the majority in presuming a document to be a release. All of them recognize the importance of the question whether the plaintiff has been satisfied. *Byrd v. Crowder* and the majority opinion stand alone in strictly construing covenants not to sue as releases contrary to the expressed intention of the contracting parties.

I must concede that the relatively recent pronouncement of this Court in *Morris v. Diers,* 134 Colo. 39, 298 P. (2d) 957 supports the opinion of the majority. That decision is subject to the criticisms which the majority opinion here is subject to and it should be, in my opinion, repudiated.

I would reverse the judgment and remand the cause for further proceedings.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur in this dissent.